UNITED STATES of America,
Plaintiff–Appellee,

v.

Toufic S. NAGI (89–2130); Robert F. Barash (89–2140); and Richard Weaver (89–2131), Defendants–Appellants.

Nos. 89–2130, 89–2140 and 89–2131.

United States Court of Appeals,
Sixth Circuit.

Submitted May 14, 1991.

Decided Oct. 11, 1991.

Rehearing and Rehearing En Banc Denied in Nos. 89–2130, 89–2140 Jan. 7, 1992.

Kathleen Moro Nesi, Asst. U.S. Atty. (argued), Wayne F. Pratt (briefed), Detroit, Mich., for U.S.

Douglas R. Mullkoff, Kessler & Geer, Ann Arbor, Mich. (briefed), for Toufic Saleh Nagi.

James C. Howart, Detroit, Mich. (briefed), for Richard Weaver.

Robert Francis Barash, pro se.

Martin A. Geer, Kessler & Geer, Ann Arbor, Mich. (argued and briefed), for Robert Francis Barash.

Before JONES and RYAN, Circuit Judges, and BROWN, Senior Circuit Judge.

RYAN, Circuit Judge.

Defendants, Toufic Nagi, Robert Barash, and Richard Weaver, appeal their sentences arising from their convictions for conducting a continuing criminal enterprise, and for conspiracy to possess with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 846, 848. The issues on appeal are:

Whether the district court committed reversible error in calculating Nagi's and Barash's sentences using the Sentencing Guidelines which became effective after the alleged conspiracy had ended; and Whether the district court correctly found that Weaver was not a minor participant within the meaning of Sentencing Guideline § 3B1.2, denying Weaver a two point reduction in his sentence.

For the reasons expressed below, we affirm.

## I.

Defendants were indicted for conspiracy to possess with the intent to distribute cocaine and heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), in September 1988. Nagi and Barash were also charged with conducting a continuing criminal enterprise, in violation of 21 U.S.C. § 848, and other related felonies. Pursuant to identical plea agreements under Fed.R.Crim.P. 11, Nagi and Barash pled guilty to the continuing criminal enterprise charge. Both Nagi's and Barash's plea agreements provided that:

[t]he government promises, and the defendant agrees, that the applicable guideline range is 188–235 months. The Court and Probation is free to accept or reject this calculation; however, neither party is free to withdraw from this agreement on the basis that the Guidelines differ from this expectation.

Work sheets were attached to the plea agreements and incorporated by reference which calculated the defendants' base offense levels using section 2D1.5 of the Sentencing Guidelines which was effective October 15, 1988. This section provides that for a first conviction of engaging in a continuing criminal enterprise, the appropriate base offense level is 36. However, the original version of Guideline § 2D1.5, effective November 1, 1987, provided that the appropriate base offense level was 32.

Both Nagi's and Barash's presentence reports determined that their plea agreements reflected an accurate base offense level at 36. The district court agreed and, without objection, adjusted both defendants' base offense levels to 34 for acceptance of responsibility. With this adjustment, the guideline range was 188–235 months' imprisonment. The court sentenced both defendants to 204 months, with 4 years' supervised release.

Weaver pled guilty, pursuant to a Rule 11 plea agreement, to one count of conspiracy to possess with the intent to distribute a controlled substance. Weaver's plea agreement provided that Weaver would not be sentenced to more than 71 months. However, the parties did not agree upon whether Weaver was entitled to a two point reduction in his sentence because he was a minor participant as defined in section 3B1.2 of the Sentencing Guidelines. The district court concluded that Weaver was not a minor participant within the meaning of section 3B1.2 and sentenced him to 65 months' imprisonment with 4 years' supervised release.

## II.

### Nagi and Barash

Nagi and Barash claim the district court erroneously calculated their base offense levels using the Sentencing Guidelines which were effective October 15, 1988. Defendants argue that the Guidelines effective in November 1987 should apply because the indictment to which they plead guilty provides: "[t]hat from on or about August, 1986, said date being approximate, and continuing thereafter to and including October 11, 1988, ...." They claim that because the indictment fixes the completion of the offense on October 11, 1988, the October 15, 1988, Guidelines are inapplicable. Thus, they contend that their base offense levels are 32, not 36 as determined by the district court.

■■■ The government responds that defendants waived this issue by failing to raise it in the lower court. We agree. Although technically the November 1987 Guidelines apply because of the potential *ex post facto* problem,[1] Nagi and Barash raise this issue for the first time on appeal.

For the familiar reason that we do not ordinarily address issues that might have been but were not raised in the trial court, we decline to address the issue now for the first time.

■■■ Anticipating our adherence to the traditional rule that issues not raised below are not addressed here, defendants cite several cases for the proposition that a defendant may appeal a sentence under 18 U.S.C. § 3742(a)(1) or (a)(2) which permits appeals of sentences "imposed in violation of the law" or "imposed as a result of an incorrect application of the sentencing guidelines," even when the issue was not raised in the trial court. However, we think defendants do not read this provision of the code accurately. Section 3742 specifically provides:

> **§ 3742. Review of a sentence**
> **(a) Appeal by a defendant.**—A defendant may file a notice of appeal *in the district court* for review of an otherwise final sentence if the sentence—
> (1) was imposed in violation of law;
> (2) was imposed as a result of an incorrect application of the sentencing guidelines....

18 U.S.C. § 3742 (emphasis added). Therefore, a defendant must first present the claim *in the district court* before we can entertain the alleged misapplication of the Guidelines on appeal. Clearly, the district court's failure to address the asserted misapplication is not "plain error" because both sides agreed to the application of the October Guidelines.

In reaching this conclusion, we distinguish the closely related case of *United States v. Newsome*, 894 F.2d 852 (6th Cir. 1990), in which this court held that 18 U.S.C. § 3742(f)(1) requires the court to remand the case for further sentencing

---

1. Generally, a district court must apply the Guidelines in effect "at the time of sentencing" under 18 U.S.C. § 3553(a)(4). However, when the Guidelines in effect at the time of sentencing provide for a higher range than those in effect at the time the crime was committed, an *ex post facto* problem exists and the court must not impose a sentence in excess of that allowed by the older Guidelines. *See Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987).

The indictment in this case states that the criminal enterprise continued until October 11, 1988—before the effective date of the October Guidelines. Because section 2D1.5 of the October 1988 Guidelines (those in effect at the time of defendants' sentencing) provides for a higher base offense level than the November 1987 Guidelines (those in effect at the time the crime was committed), *technically* the older Guidelines apply.

proceedings when a sentence is imposed in violation of law. *Newsome* is distinguishable in two respects. First, the presentence report in that case determined that the defendant's sentence was miscalculated in the plea agreement. Second, defense counsel in *Newsome* filed a memorandum in the district court prior to sentencing urging the court to impose a sentence within the correct guideline range.

In contrast, Nagi's and Barash's presentence reports agreed with the plea agreements that the October 1988 Guidelines were applicable. Additionally, both defense counsel strongly urged the district court to accept the plea agreements and impose a sentence within the range expressed in those agreements.

Furthermore, we find that defense counsel's action in *Newsome* satisfied the requirements of 18 U.S.C. § 3742(a)(1) or (a)(2) by filing a memorandum in the district court prior to the court's imposition of the defendant's sentence. In this instance, defendants failed to notify the district court in any way of a claim that their sentences were improper.

We also find *United States v. Sloman,* 909 F.2d 176, 182–83 (6th Cir.1990), persuasive. In *Sloman,* defense counsel orally agreed that the November 1, 1987, Sentencing Guidelines applied, even though the indictment charged a conspiracy running from about May 9, 1986, until about September 7, 1988. On appeal, the defendant claimed that the pre-November 1, 1987, law should apply. This court refused to consider such a claim, stating:

> An attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course. [Defendant] waived any objection he might have to being sentenced under the guidelines.

*Id.* at 182.

Nagi and Barash both agreed in their plea agreements that the Guidelines which applied were those effective October 15, 1988. They may not now argue on appeal that the district court erred in following that course urged by their respective counsel in the trial court.[2]

Nevertheless, defendants claim they should be excused for the failure to raise this issue in the district court because they received ineffective assistance of counsel. However, we have repeatedly held that an ineffective assistance of counsel claim may not be raised on appeal for the first time when there is no proof of ineffective assistance of counsel in the record. *United States v. Walton,* 908 F.2d 1289, 1295 (6th Cir.), *cert. denied sub nom., Mitchell v. United States,* — U.S. —, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990); *United States v. Swidan,* 888 F.2d 1076, 1081 (6th Cir.1989). There is no evidence in the record that Nagi or Barash received ineffective assistance of counsel in the negotiation of their plea agreements. To the contrary, if both defendants had not entered into such plea agreements, they each would have faced the prospect of 30 years to life imprisonment. Instead, each defendant only received 17 years' imprisonment.

In sum, we find that Nagi and Barash waived this issue because they failed to first present the claim to the district court, as required under 18 U.S.C. § 3742(a). Accordingly, we affirm.

### III.

#### Weaver

Weaver claims that the district court's finding that he did not play a "minor role" in the conspiracy was clearly erroneous. He argues that Nagi and Barash were the principal operators in a large scale cocaine trafficking operation, and that he was merely a minor participant. He claims, therefore, to be entitled to a two point reduction in his sentence under section 3B1.2 of the Sentencing Guidelines.

Sentencing Guideline § 3B1.2(b) provides for a minor participant reduction when a

---

**2.** Implicit in the dissent is the proposition that, under the majority opinion, as a result of the failure of Nagi and Barash to raise the Guidelines issue in the district court, they have no remedy. However, they are free to file a petition for relief under 28 U.S.C. § 2255 and obtain a ruling on their contention from which they may appeal.

party is "less culpable than most other participants" and "substantially less culpable than the average participant." "The culpability determination is 'heavily dependent upon the facts,' and the defendant has the burden of proving mitigating factors by a preponderance of the evidence." *United States v. Perry*, 908 F.2d 56, 58 (6th Cir.) (citations omitted), *cert. denied*, —— U.S. ——, 111 S.Ct. 565, 112 L.Ed.2d 571 (1990). On appeal, we "shall accept the findings of fact of the district court unless they are clearly erroneous" and shall give due deference to the district court's application of the guidelines to the facts. 18 U.S.C. § 3742(d).

When considering this issue, the district court found that Weaver was heavily involved in the Nagi–Barash conspiracy. It stated that Weaver distributed from 250–500 grams of cocaine every week, received the cocaine from a runner, and paid the runner for the drugs. The court also noted that Weaver indicated that he sold a quarter kilogram of cocaine every six days for $6,500, making $1,000 profit each time. We conclude that these findings are amply supported in the record and demonstrate that the conspiracy relied upon Weaver to move large quantities of cocaine every week.

As stated in *Perry*, "[a]lthough [defendant] may have been less culpable than most other participants, we cannot say that his part in the conspiracy made him 'substantially less culpable than the average participant.'" 908 F.2d at 58. In other words, although Weaver may have been less culpable than Nagi and Barash, we cannot say that Weaver's part in the conspiracy made him "substantially less culpable than the average participant."

Accordingly, the district court's finding that Weaver was not a minor participant within the meaning of section 3B1.2 is not clearly erroneous. The judgments of conviction and the sentences imposed are AFFIRMED.

NATHANIEL R. JONES, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority's analysis as to defendant Weaver and therefore concur in that portion of the majority's opinion. However, I cannot agree with the majority's position that defendants Barash and Nagi can be bound to an unquestionably unlawful sentence by virtue of a plea agreement. As I believe the lawful guideline range remains the lawful guideline range regardless of any agreement by the United States and the defendants to the contrary, I dissent.

In this case, all the parties, including the district court, were under the mistaken impression that the appropriate guideline range should have been 188–235 months based upon an offense level of 36. This impression was the result of an application of the amended version of U.S.S.G. § 2D1.5 which became effective on October 15, 1988. Under the prior version of § 2D1.5, the proper offense level was 32 with a sentencing range of 121–151 months. As the majority points out, the indictment charged Barash and Nagi with a continuing criminal enterprise that existed "from on or about August, 1986, said date being approximate, and continuing thereafter and including October 11, 1988[.]" Since the amended version of § 2D1.5 did not come into effect until October 15, 1988, the original version of § 2D1.5, with its offense level of 32 and its sentencing range of 121–155 months was the lawful guideline range.

The majority seeks to diminish the "*ex post facto* problem" of sentencing the defendants to at least 49 months longer in prison under the inapplicable amended guideline by treating this as a "technical" misapplication of the guidelines. However, technical or not, it is a misapplication of the guidelines as a matter of law resulting in a sentence to the defendants which is higher than the sentence in effect at the time the crime was committed. The Supreme Court has held that such an application of the guidelines is a violation of the *ex post facto* clause and the older guideline must be applied. *See Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987).

The majority seeks to circumvent the unconstitutional nature of the sentence imposed by treating any objection to the sen-

tence as "waived." The majority relies upon 18 U.S.C. § 3742 for the proposition that "a defendant must first present the claim *in the district court* before we can entertain the alleged misapplication of the Guidelines on appeal." Maj.Op. at 213 (emphasis original). However, § 3742's requirement that a "notice of appeal" be filed with the district court has nothing whatsoever to do with what issues were raised in the district court. All notices of appeal are filed with the district court before this court has jurisdiction to hear the appeal. It is a different question, however, whether the issues raised on appeal were raised before the district court, and further what legal effect, if any, the failure to raise an issue below will have on our disposition of the case. Obviously a notice of appeal was filed in this case, and that notice of appeal raised issues regarding the sentences the district court imposed on the defendants. Thus, any problem the majority has with our addressing the misapplication of the guidelines in this case must stem from something other than defendant's failure to file a notice of appeal in the district court.

I submit that the majority's waiver argument is based upon the theory that the United States and the defendant may somehow "agree" to the imposition of an otherwise unlawful sentence in a plea agreement. The majority states: "Clearly, the district court's failure to address the asserted misapplication [of the guidelines] is not 'plain error' because both sides agreed to the application of the October guidelines." Maj.Op. at 213. While the majority asserts this proposition as though it were obvious and clearly established law, such a position is not only unprecedented, it threatens to violate the very uniformity in sentencing the guidelines were designed to create.

Ch. 1, Pt.A 2 of the guidelines states in relevant part:

Pursuant to the Act, the sentencing court *must* select a sentence from within the guideline range. If, however, a particular case presents *atypical* features, the Act allows the court to depart from the guidelines and sentence outside the prescribed range. In that case, the court must specify reasons for departure. 18 U.S.C. § 3553(b). If the court sentences within the guideline range, an appellate court may review the sentence to determine whether the guidelines were correctly applied. If the court departs from the guideline range, an appellate court may review the reasonableness of the departure. 18 U.S.C. § 3742.

U.S.S.G. Ch. 1, Pt.A 2 (emphasis added). This passage makes clear that two types of sentences are possible under the guidelines. The first involves sentences imposed under the appropriate guideline range, and the second involves a departure from the appropriate guideline range based upon specific findings justifying the departure. There is simply no provision for sentencing based upon the wrong version of a guideline. Such a sentence is unlawful as a matter of law. Thus, the only way a court may sentence a defendant outside the appropriate guideline range is to find *atypical* circumstances warranting a departure. *See* U.S.S.G. § Ch. 1, Pt.A 2.

This court has held that the same is true when the defendant "agrees" to a unlawful sentence in a Fed.R.Crim.P. 11 plea agreement. *United States v. Newsome*, 894 F.2d 852 (6th Cir.1990). In *Newsome* the defendant's lawyer mistakenly calculated the guideline range to result in a maximum sentence of 57 months. *Id.* at 854. Based upon this mistaken calculation, the government and the defendant agreed to a plea agreement which incorporated a sentence cap of 57 months. Later the probation department calculated the sentence in the presentence report and found that the proper range was 33–41 months. Nevertheless, the district court sentenced the defendant to 57 months without making findings as to the basis for its departure from the appropriate guideline range. This court reversed, citing 18 U.S.C. § 3553(b)'s requirement that the only method of departure from the proper guideline range was to make specific findings justifying an upward departure. *Id.* at 856–57. In so finding the court noted that it was irrelevant that the defendant agreed, based upon a mistaken calculation of the guidelines, to a

sentence cap of 57 months as such an agreement did not change the statutory requirement to sentence under the appropriate guideline or find the aggravating circumstances giving rise to a reason for a departure. *Id.* at 856.

The logic of the *Newsome* rule goes to the heart of the purposes of the guidelines. If the United States could circumvent the guideline range by agreement, then there would, in effect, be no uniformity in sentencing. It is no accident that the overwhelming majority of Rule 11 plea agreements contain a clause stating that the district court may impose a sentence different from the one described in the agreement. This is because the district court, and not the parties, has the duty to insure that the sentence imposed is in conformity with the guidelines and other relevant law. Similarly, as judges of the United States Court of Appeals, we have a duty to insure that the sentence imposed by the district court is in conformity with the guidelines and with relevant law. 18 U.S.C. § 3742(e).

The majority tries to distinguish this case from *Newsome* by asserting that in *Newsome* the presentence report showed that the plea agreement had miscalculated the sentence and that the defense attorney requested sentencing based upon the presentence report. However, the majority's distinctions amount to a finding that if the error is discovered before sentencing, then the defendant has a remedy, whereas, if the error is not discovered until after sentencing, there is no remedy. In *Newsome,* the district court, despite knowledge of the proper guideline range, improperly sentenced the defendant. In the instant case, the district court and the probation office were equally under the mistaken impression that the amended version of § 2D1.5 applied when it did not. Thus, under the majority's position, a knowing error is actionable whereas a mistake of law is not. The absurdity of such a position need not be emphasized. The cornerstone of any argument based upon waiver is that such waiver is knowing, and in circumstances where all parties concerned did not know of the error, it can hardly be charged that the defendants, but not the other actors, were derelict in not realizing the mistake.

The majority also relies upon *United States v. Sloman,* 909 F.2d 176 (6th Cir. 1990). In *Sloman,* the defendant's lawyer affirmatively represented to the court that the guidelines applied to a conspiracy which admittedly began before the applicability of the guidelines. *Id.* at 182. As the majority suggests, this court in *Sloman* refused to hear a challenge to the applicability of the guidelines after the lawyer had argued for their applicability below. *Id.* However, *Sloman* involved a situation where the lawyer calculated as a strategic matter that his client would do better under the guidelines than he would under preguidelines sentencing, and then later sought to argue the opposite when he was not pleased with the result. In the instant case, no strategic question was presented as to whether to plead guilty based upon the applicability of one version of the guideline or another. Rather all parties including the district court assumed that the stricter version of the guidelines applied. They were mistaken as a matter of law, and no agreement by the defendant and the United States can undo the fact that the sentence is unlawful.

As I believe that the majority's "waiver" rule based upon a so-called agreement to an unlawful sentence not only works a considerable injustice on the defendants in this case, but also provides the basis upon which the government can achieve sentences by "agreement" that it could not otherwise lawfully achieve under the guidelines, I dissent.