995 F.2d 1068
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ivy KIESTLER, Bobby Callins, and Gordon Henry, Defendants-Appellants.
 Nos. 92-5099, 92-5600 and 92-5601.
 United States Court of Appeals, Sixth Circuit.
 May 21, 1993.
 
 Before GUY and BOGGS, Circuit Judges, and GIBSON, Chief District Judge.*
 PER CURIAM:
 
 
 1
 Defendants Ivy Kiestler (92-5099), Bobby Callins (92-5601), and Gordon Henry (92-5600) appeal their convictions and sentences in a drug conspiracy case.
 
 
 2
 Kiestler, who pled guilty to a single count of possession of dilaudid with intent to distribute, makes two allegations of error: (1) the district court erred by refusing to reduce her sentence by two points for minor participation in the offense, and (2) the district court erred in concluding that it lacked authority to make a downward departure from the Sentencing Guidelines.
 
 
 3
 Callins was tried for conspiracy and two substantive counts. The district court granted a judgment of acquittal as to the conspiracy, but Callins was found guilty of the remaining counts. Callins raises two allegations of error: (1) the district court improperly admitted statements of co-conspirators, and (2) the district court erred in admitting testimony about crimes for which Callins had already been convicted and in admitting evidence relating exclusively to the charge of conspiracy for which he received a directed verdict of acquittal.
 
 
 4
 Henry was charged, tried, and convicted of a single conspiracy count. Henry makes six allegations of error: (1) the evidence adduced at trial was insufficient to sustain the conviction of conspiracy; (2) the district court abused its discretion in not declaring a mistrial after a response made by a potential juror during voir dire tainted the jury panel; (3) the district court erred in failing to grant Henry's pretrial motion for severance; (4) the district court erred in failing to instruct the jury on lesser included offenses; (5) the district court erred in accepting the base offense level computation of the presentence report; and (6) it was improper for Henry to be the only person charged in the indictment to be convicted of conspiracy.
 
 
 5
 For the reasons stated below, we AFFIRM.
 
 I.
 
 6
 Appellants were three of nineteen persons indicted by a federal grand jury in the Western District of Tennessee in May of 1991. All three appellants were charged with conspiracy to possess and distribute controlled substances in violation of Title 18 United States Code Section 371. The specific drugs alleged to have been the subject of the conspiracy were dilaudid, cocaine, and marijuana. Callins and Kiestler were also charged with substantive counts of possession of dilaudid with intent to distribute.
 
 
 7
 The events which prompted the indictment took place in McNairy County, Tennessee. Confidential informant Carolyn Moore worked with the Drug Enforcement Agency and the Tennessee Highway Patrol to infiltrate a suspected drug ring in the county. Moore and Ronnie Hays of the Tennessee Highway Patrol were eventually able to make hand-to-hand buys from persons involved in the drug ring including Callins and appellant Kiestler's husband, Clarence Kiestler.
 
 
 8
 Appellant Kiestler pled guilty to a single count of possession with intent to distribute. At her sentencing hearing, she admitted that she was a party to a 200 dilaudid tablet sale to Moore. Kiestler acknowledged that she helped her husband purchase the dilaudid, but she contended that her husband and Moore pressured her into participating in the sale. On December 17, 1991, Kiestler was sentenced to 27 months imprisonment with three years supervised release.
 
 
 9
 Callins and Henry were the only two of the alleged conspirators who were actually tried. They were tried together despite the fact that pretrial motions for severance were filed. Henry made one of these pretrial motions but failed to renew it at the close of the evidence. Callins did not make a pretrial motion for severance, but he filed a timely motion for a new trial which raised the issue of improper joinder.
 
 
 10
 Prior to trial, the members of the voir dire panel were questioned about their specific knowledge of the drug dilaudid. One potential juror, a pharmacist, stated that he chose not to carry dilaudid because of problems involved with stocking the drug. He also indicated that he was routinely asked to fill "suspicious" prescriptions. Another potential juror, a dentist's wife, informed the Court that her husband was also often asked to fill prescriptions he thought were "not necessary." All members of the voir dire panel, including those who were eventually selected as jurors, heard these remarks.
 
 
 11
 At trial, confidential informant Moore testified that she purchased tablets from Callins. Other evidence against Callins included testimony about a dilaudid sale to a Mississippi law enforcement officer for which Callins had been convicted in state court. In addition, evidence of statements made by former co-conspirators was admitted to show that Callins sold dilaudid on unspecified dates between 1985 and July of 1990. After the trial court directed a verdict of acquittal in favor of Callins as to the conspiracy count, it instructed the jury to disregard any co-conspirators' statements when considering the remaining counts against him. Callins was convicted, and on April 2, 1992, he was sentenced to 240 months in prison.
 
 
 12
 Henry was tried with Callins. The trial court admitted co-conspirators' statements which showed that Henry travelled to Illinois to have dilaudid prescriptions filled and that he brought the pills back to McNairy County. Co-conspirators also testified that Henry sold drugs to them on occasion. Henry was convicted, and on April 2, 1992, he was sentenced to 170 months in prison.
 
 II.
 
 13
 The Court separately considers the arguments raised by each appellant and addresses each in seriatim.
 
 A. KIESTLER
 
 14
 Section 3B1.2(b) of the United States Sentencing Guidelines ("U.S.S.G.") states that a defendant is entitled to a two point reduction if his or her role in a crime was "minor." The commentary to the guidelines defines "minor participant" as one who is "less culpable than most other participants, but whose role cannot be defined as minimal." The determination of a defendant's degree of culpability is a question of fact, and the defendant bears the burden of proving, by a preponderance of the evidence, that mitigating factors exist. United States v. Nagi, 947 F.2d 211, 215 (6th Cir.1991). We accept the district court's findings of fact unless clearly erroneous, giving due deference to the district court's application of the guidelines to the facts. Id.; United States v. Anders, 899 F.2d 570, 580 (6th Cir.1990).
 
 
 15
 Kiestler argues that she is entitled to the two point reduction outlined in Section 3B1.2(b) of the Sentencing Guidelines. The examination and cross-examination of Kiestler during her sentencing hearing indicate that the district court was not clearly erroneous in determining that Kiestler did not come forward with sufficient evidence to show that she was entitled to the reduction. In fact, Kiestler admitted that she told her husband to buy 200 dilaudid tablets instead of 100 and that she drove her husband to make a purchase.
 
 
 16
 Kiestler argues that the Court should have classified her role as minor because it found that her husband was the major drug dealer and that Kiestler was helping him. This Circuit has found, however, that the fact that a defendant is less culpable than one or more co-conspirators is not sufficient to entitle him or her to the reduction. Nagi, 947 F.2d at 215. A defendant must also show that he or she is less culpable than an average participant. Id. The Court finds that Kiestler has not shown that she is less culpable than the average participant, and therefore affirms the determination of the district court.
 
 
 17
 Kiestler's second argument is that the district court erred in determining that U.S.S.G. § 5K2.10(b) did not permit it to make a downward departure from the guidelines. Generally, a district court's decision that it will not make a downward departure from the Sentencing Guidelines is not reviewable. United States v. Davis, 919 F.2d 1181, 1187 (6th Cir.1990). If, however, the district court is unaware that it had the legal authority to depart, we will review the sentence. See United States v. Maddalena, 893 F.2d 815 (6th Cir.1989). Assuming that the district court's reason for refusing to depart from the guidelines was because it believed it lacked the authority to do so, its decision is nonetheless affirmed.
 
 
 18
 Section 5K2.10, entitled "Victim's Conduct," allows courts to make a downward departure from the Sentencing Guidelines when a victim's wrongful conduct provoked the offense in some way.[1] Kiestler argues that Moore, the confidential informant who purchased the drugs, was a victim of the crime since all of society is victimized by drug activity, including persons who purchase and use drugs. Kiestler then argues that Moore's unsavory character and conduct provoked Kiestler to commit the crime, thereby entitling her to a departure under Section 5K2.10.
 
 
 19
 While in a broad philosophical sense a drug purchaser may well be the victim of a drug deal, such purchasers are not properly defined as victims under Section 5K2.10 of the Sentencing Guidelines. Section 5K2.10 focuses upon the possible danger posed to the defendant by the victim and upon whether the victim was in any way responsible for any confrontation between the defendant and the victim. No evidence was presented that Kiestler was in danger or that any confrontation occurred. Furthermore, Section 5K2.10 explicitly notes that it should not generally be applied to nonviolent crimes. The only "unusual" nonviolent circumstance in which the commentary suggests the provision might apply is when the victim engages in an extended course of provocation and harassment. No evidence of such a course of conduct was presented in this case. See United States v. Sanchez, 917 F.2d 607 (1st Cir.1990). We thus determine that Section 5K2.10 should not apply in nonviolent drug transaction cases. Holding otherwise would render the Sentencing Guidelines a nullity in such cases since sellers would always be entitled to a downward departure as the conduct of the buyers inevitably contributes to the seller's criminal behavior.
 
 B. CALLINS
 
 20
 Appellant Callins' first allegation of error is that the lower court failed to make an appropriate finding under United States v. Enright, 579 F.2d 980 (6th Cir.1978), thereby rendering its decision to admit co-conspirator statements erroneous. In the alternative, Callins urges this Court to reconsider its decision in Enright.
 
 
 21
 This Circuit has determined that a district court must find, by a preponderance of the evidence, that there is sufficient evidence of a conspiracy to allow hearsay statements of co-conspirators to be admitted. United States v. Enright, 579 F.2d 980 (6th Cir.1978). Courts, however, are permitted to admit co-conspirator statements conditionally until the government establishes enough evidence to show the existence of a conspiracy. United States v. Vinson, 606 F.2d 149, 153 (6th Cir.1979). The district court, following the dictates of Enright and Vinson, allowed the co-conspirator statements to be conditionally admitted. Later, it determined that the evidence, while sufficient to show that defendant Henry had participated in the conspiracy, was insufficient to show that defendant Callins had participated. The court thereupon made a finding that the co-conspirator statements should be used only against Henry and not against Callins. The Court instructed that the jury "not consider evidence of co-conspirators statements against [Callins] in any way." Transcript at 781.
 
 
 22
 Clearly the lower court made an Enright determination; thus, appellant's argument that the court did not consider the factors outlined in Enright must fail. While it would have been better if the co-conspirators' statements were not introduced, the Court finds that the lower court correctly determined that the limiting instruction shielded defendant from prejudice. The Court may not overrule this court's precedent as established by an earlier panel in Enright. Salmi v. Secretary of Health and Human Services, 774 F.2d 685, 689 (6th Cir.1985).
 
 
 23
 The second issue Callins presents on appeal is that the lower court erred:
 
 
 24
 [I]n admitting into evidence testimony as to another crime for which the Defendant had been convicted in state court, and in furthermore admitting into evidence testimony of former co-defendants.... where each of said offers of proof were submitted by the Government as to proof of a conspiracy, where once again no agreement either express or direct between the Defendant and any other person to commit a crime as alleged in the indictment was ever proven, and as a result of the above, did the Honorable District Court err in not declaring a mistrial due to retroactive misjoinder.
 
 
 25
 Brief of Defendant-Appellant Callins at 18.
 
 
 26
 We construe Callins' argument as a request that this Court overturn the district court's denial of Callins' motion for a new trial which was based, in part, on improper joinder. "Retroactive misjoinder" occurs when two or more defendants are initially properly joined but subsequent events, such as a directed verdict of acquittal as to some counts, render the joinder improper. See United States v. Warner, 690 F.2d 545, 553 (6th Cir.1982). In determining whether such misjoinder is cause for a mistrial, a court must consider whether compelling prejudice occurred because of that misjoinder. Warner, 690 F.2d at 554; see also United States v. Lane, 474 U.S. 438, 447 (1986); Schaffer v. United States, 362 U.S. 511, 514-17 (1960). We find that the limiting instructions given by the district court were sufficient to prevent such prejudice.
 
 
 27
 To the extent that Callins argues that the district court erred in admitting evidence of his prior crimes, we again determine that Callins was not prejudiced by the admission of such evidence. The district court stated when the evidence was initially introduced that it was being admitted only to show conspiracy. Later the district court instructed the jury to ignore the evidence relating to conspiracy. This Court finds that in light of these instructions, Callins was not prejudiced by the admission of this evidence.
 
 C. HENRY
 
 28
 Appellant Henry's first allegation of error is that the evidence was insufficient to sustain the conviction of conspiracy. In United States v. Tilton, 714 F.2d 642, 645-46 (6th Cir.1983), we set forth the test for reviewing the sufficiency of the evidence underlying a jury conviction:
 
 
 29
 A jury conviction must be sustained if there is substantial evidence on the record to support it. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). In making this determination, an appellate court must view all of the evidence in the light most favorable to the government, resolve all inferences which may reasonably be drawn from the evidence in the government's favor and resolve all conflicts in the testimony in the same way. United States v. Wolfenbarger, 426 F.2d 992 (6th Cir.1970). If under such a review, there is sufficient competent evidence on the record to justify a rational juror's conclusion that every element of the offense has been established beyond a reasonable doubt, the conviction must be affirmed. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, reh'g denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979).
 
 
 30
 Furthermore, this Circuit has determined that no formal or express agreement is required in order for the government to show the existence of the conspiracy. United States v. Hitow, 889 F.2d 1573, 1577 (6th Cir.1989). Once the government has shown a conspiracy exists, it need only show a slight connection between the defendant and the conspiracy. United States v. Betancourt, 838 F.2d 168, 174 (6th Cir.1988); United States v. Olson, 978 F.2d 1472, 1499 (7th Cir.1992). The government must only prove that the defendant knew the object of the conspiracy, associated himself with it, and knowingly contributed his efforts in its furtherance. Id.
 
 
 31
 The Court finds that when the evidence is viewed in the light most favorable to the government, a rational juror could have found that Henry was part of the alleged conspiracy. Witnesses were presented who testified that Henry sold dilaudid, asked them to sell dilaudid, and traveled to Illinois and back for the purpose of obtaining dilaudid. Henry concedes that the evidence establishes "several different agreements to distribute dilaudid" but argues that the government did not present sufficient evidence that the parties were part of one "grand conspiracy." Even the case cited by Henry, United States v. Townsend, states that when government's evidence arguably establishes multiple conspiracies, "there is no variance from an indictment charging a single conspiracy if a reasonable trier of fact could have found beyond a reasonable doubt the existence of a single conspiracy." United States v. Townsend, 924 F.2d 1385, 1389 (7th Cir.1991) (quoting United States v. Prince, 883 F.2d 953, 959 (11th Cir.1989)). Townsend further states "the government does not have to prove with whom a defendant conspired, it need only prove that the defendant joined the agreement alleged, not the group." Id. While the government may not have proven that Henry knew of the role of each and every defendant named in the indictment, we find that the evidence was sufficient to allow the jury to conclude that Henry joined the conspiracy.
 
 
 32
 Henry's second argument was that the district court should have granted a mistrial because the jury panel was tainted by the remarks made by the pharmacist, Mr. Cagle. Henry argues that the comments of Ms. Reese, the dentist's wife, both illustrate and exacerbate that taint. We review the denial of a motion for mistrial for abuse of discretion. United States v. Atisha, 804 F.2d 920, 926 (6th Cir.1986), cert. denied, 479 U.S. 1067 (1987). Deference to the district court's determination is especially warranted when the motion for mistrial is made in the context of voir dire because the trial judge had the opportunity to observe the demeanor of the jurors and observe potential prejudice. United States v. Tegzes, 715 F.2d 505, 508 (11th Cir.1983).
 
 
 33
 This Circuit has held that a statement made by a potential juror about a discussion she had about another case involving the defendant was not grounds for a mistrial when the judge instructed the jurors to disregard the comments and none of the jurors indicated that the remarks affected their impartiality. United States v. Shropshire, 498 F.2d 137, 139 (6th Cir.1974). The Eleventh Circuit has ruled that statements made by jurors about the drug-induced deaths of members of their families did not taint the jury panel. Tegzes, 715 F.2d at 508. In making this determination, the Eleventh Circuit found that the Constitution did not require that a "juror be totally ignorant of the consequences of the crime, nor free of opinions toward that crime." Id. at 507.
 
 
 34
 Henry argues that this case is factually distinguishable from the Tegzes case because the pharmacist had special status as an expert in the eyes of the voir dire panel. The district court, in denying the motion for a mistrial, made a determination that neither the pharmacist's statements nor his status prejudiced the jury in any way. We find that, in light of all the facts and circumstances, the district court did not abuse its discretion in making this finding.
 
 
 35
 Appellant Henry's third argument on appeal is that the district court should have granted his pretrial motion to sever. A motion to sever is deemed waived if it is not renewed at the end of the evidence. United States v. Swift, 809 F.2d 320, 323 (6th Cir.1987). As Henry failed to renew his motion, we hold that it is waived and do not address its merits.
 
 
 36
 Henry's fourth argument is that the district court should have instructed the jury that simple possession and conspiracy to possess were lesser included offenses of the crime of conspiracy to possess with intent to distribute. Lesser included offense instructions should only be given when "the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser included offense." Sansone v. United States, 380 U.S. 343, 350 (1965). No evidence was presented at trial which suggested that the defendant possessed or conspired to possess the drugs merely for his personal use. Furthermore, the amount of the drugs involved in the conspiracy suggests the intent to distribute. We therefore find that there were no disputed issues of fact which would enable a jury to rationally find that all the elements of the lesser included offense, but not all elements of the greater offense, were proven.
 
 
 37
 Henry's fifth argument is that the district court erred in accepting the base offense level computation of the presentence report. Appellant argues that the base offense level should have been calculated according to the net weight of the hydromorphone contained within each dilaudid tablet instead of the weight of the tablet. In Chapman v. United States, the United States Supreme Court held that the weight of the carrier, in that instance blotting paper which contained LSD, should be included in computing the weight of the drug for sentencing guideline purposes. Chapman v. United States, 111 S.Ct. 1919 (1991). Furthermore, this Circuit has already determined that the entire weight of the dilaudid tablet should be used in making sentencing determinations. United States v. Williams, No. 91-5134, slip op. (6th Cir. Sept. 27, 1991); United States v. Sims, No. 90-6062, slip op. (6th Cir. June 21, 1991).
 
 
 38
 Henry's final argument is that it is inconsistent, and therefore error, that he was the only person of the nineteen originally indicted to be convicted of conspiracy. Henry argues that at least one other co-conspirator must also be convicted as he could not have conspired with himself. The reason that Henry was the only person convicted is that all defendants except him and Callins, who received a directed verdict of acquittal on the conspiracy count, entered into plea agreements. This Circuit has recognized that the "rule of consistency" only requires the acquittal of the remaining defendant when all the conspirators are tried together and all except one are acquitted. United States v. Sachs, 801 F.2d 839, 845 (6th Cir.1986). Where defendants are tried separately, where all but one are dismissed, or where some conspirators are not indicted, there is no bar to the conviction of a single defendant. Id. Thus, in these circumstances it is not error for Henry to be the only defendant convicted of conspiracy.
 
 
 39
 AFFIRMED.
 
 
 
 *
 The Honorable Benjamin F. Gibson, United States District Court for the Western District of Michigan, sitting by designation
 
 
 [1]
 Section 5K2.10 states:
 If the victim's wrongful conduct contributed significantly to provoking the offense behavior, the court may reduce the sentence below the guideline range to reflect the nature and circumstances of the offense. In deciding the extent of a sentence reduction, the court should consider:
 (a) the size and strength of the victim, or other relevant physical characteristics, in comparison with those of the defendant;
 (b) the persistence of the victim's conduct and any efforts by the defendant to prevent confrontation;
 (c) the danger reasonably perceived by the defendant, including the victim's reputation for violence;
 (d) the danger actually presented to the defendant by the victim; and
 (e) any other relevant conduct by the victim that substantially contributed to the danger presented.
 [T]his provision usually would not be relevant in the context of non-violent offenses. There may, however, be unusual circumstance in which substantial victim misconduct would warrant a reduced penalty in the case of a non-violent offense. For example, an extended course of provocation and harassment might lead a defendant to steal or destroy property in retaliation.