**Toufic NAGI, Petitioner–Appellant,**

v.

**UNITED STATES of America,
Respondent–Appellee.**

**No. 95–1571.**

United States Court of Appeals,
Sixth Circuit.

Argued March 14, 1996.

Decided July 16, 1996.

Rehearing and Suggestion for Rehearing
En Banc Denied Sept. 24, 1996.*

* Judge Keith would grant rehearing for the reasons stated in his dissent.

Patrick L. Brown (argued and briefed), Brown & Morehart, Florence KY, Petitioner–Appellant.

Kathleen Moro Nesi, Asst. U.S. Atty. (argued and briefed), Jonathan Tukel, Office of the U.S. Atty., Detroit, MI, for Respondent–Appellee.

Before: KEITH, NELSON, and SILER, Circuit Judges.

SILER, J., delivered the opinion of the court. NELSON, J. (pp. 136–37), delivered a separate concurring opinion. KEITH, J. (pp. 137–38), delivered a separate dissenting opinion.

SILER, Circuit Judge.

Petitioner Toufic Nagi appeals the district court's denial of his § 2255 motion to vacate or correct his sentence. Nagi claims his sentence violated the Constitution because the wrong version of the United States Sentencing Guidelines ("the Guidelines") was used to calculate his base offense level. The government asserts that Nagi has waived any objection to his sentence and that he has failed to show ineffective assistance of counsel to excuse the waiver. We affirm.

## I. Facts

Nagi was indicted for conspiracy to possess with the intent to distribute cocaine and heroin in violation of 21 U.S.C. §§ 846 and 841(a)(1), conducting a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848, and other related felonies. In the midst of trial, the Assistant United States Attorney ("AUSA") and Nagi's counsel agreed upon a plea bargain calling for a sentence between 14 and 20 years. Nagi knowingly and voluntarily pled guilty to the CCE charge in accordance with the following plea agreement:

The government promises, and the defendant agrees, that the applicable guideline range is 188–235 months. The Court and Probation is [sic] free to accept or reject this calculation; however, neither party is free to withdraw from this agreement on the basis that the Guidelines differ from this expectation.

In exchange for Nagi's plea, the government dropped the remaining counts in the indictment. Attached to the plea agreement and incorporated by reference, worksheets calculated Nagi's base offense level at 36 under USSG § 2D1.5, effective October 15, 1988. However, the original version of § 2D1.5, effective November 1, 1987, set the base offense level at 32. In this appeal, neither party disputes the fact that Nagi's criminal activities ceased *before* October 15, 1988.

The presentence report determined that the figures in the plea agreement reflected the appropriate guideline range and base offense level. At the September 20, 1989 sentencing, the district court adjusted Nagi's base offense level to 34 to reflect his acceptance of responsibility. The resulting guideline range was 188–235 months of incarceration. Without objection, the district court sentenced Nagi to 204 months. Had Nagi insisted on completing his trial, he would have faced 30 years to life imprisonment if convicted on all counts.

Nagi appealed his sentence, claiming a violation of the Ex Post Facto Clause of the Constitution because his sentence imposed a penalty higher than that which applied at the time he committed his crime. This court rejected Nagi's argument on appeal because "[Nagi] waived this issue by failing to raise it in the lower court." *United States v. Nagi*, 947 F.2d 211, 213 (6th Cir.1991), *cert. denied*, 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992). In 1995, Nagi filed a motion to set aside or correct his sentence pursuant to 28 U.S.C. § 2255. After an evidentiary hearing, the district court denied Nagi's motion.

## II. The Guidelines

■■ To prevail under 28 U.S.C. § 2255, Nagi must show a fundamental defect in his sentencing "which necessarily results in a complete miscarriage of justice or an egre-

gious error violative of due process." *Gall v. United States,* 21 F.3d 107, 109 (6th Cir.1994) (citation omitted). The district court's denial of Nagi's § 2255 motion is reviewed *de novo,* but the lower court's factual findings are reviewed for clear error. *Id.*

■ Generally, a sentencing court is to apply the Guidelines in effect on the date of sentencing pursuant to 18 U.S.C. § 3553(a)(4). *United States v. Kussmaul,* 987 F.2d 345, 350 (6th Cir.1993). However, the Ex Post Facto Clause of the Constitution "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Id.* at 351 (quoting *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)); *see also Nagi,* 947 F.2d at 213 n. 1. In the present case, use of the October 15, 1988 Guidelines resulted in a base offense level four points higher than required by the November 1, 1987 Guidelines in effect at the time of Nagi's crime. As a result, Nagi was sentenced to 204 months, 69 months higher than the maximum sentence allowable under the 1987 Guidelines.

At the evidentiary hearing below, the district court rejected the government's argument that the 1988 Guidelines applied because there was some proof that Nagi's crime continued after October 15, 1988. The district court found that Nagi's criminal activity ceased on October 11, 1988, and the government does not now dispute this finding.

■ Where revision of the Guidelines "changes the legal consequences of acts completed before its effective date" to a convict's detriment, the Ex Post Facto Clause requires application of the Guidelines in effect at the time of the criminal act. *Kussmaul,* 987 F.2d at 351–52 (quoting *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987)). Because Nagi's criminal activity ended on October 11, 1988, he should have been sentenced under the more lenient 1987 Guidelines. Technically, application of the harsher 1988 Guidelines was error with respect to the CCE conviction

alone. The punishment imposed was more severe than the penalty existing when the CCE activity occurred. *Id.* However, the punishment imposed was not more severe than the punishment assigned by law to the *totality of Nagi's crimes* when committed. The present case is therefore distinguishable from *Kussmaul* because Nagi was potentially subject to a much higher sentence than the one he received. Furthermore, Kussmaul, already convicted by a jury, had not bargained for a specific sentencing range as Nagi had done. Nagi also failed to object to the use of the 1988 Guidelines. Thus, use of the 1988 Guidelines was, in fact, not to Nagi's detriment and his reliance on *Kussmaul* is unavailing.

### III. Ineffective Assistance of Counsel

■ A plea agreement consists of the terms disclosed in open court. *United States v. Johnson,* 979 F.2d 396, 398 (6th Cir.1992). According to Federal Rule of Criminal Procedure 11, Nagi knowingly and voluntarily pled guilty to the terms of the plea agreement. He cannot now be allowed to attempt to prove that the plea agreement was otherwise than it appeared. *Johnson,* 979 F.2d at 398. A review of the record contradicts Nagi's contention that the worksheets bearing the base offense level of 36 were not part of the plea agreement. Regardless, the plea agreement clearly set forth the sentencing range of 188–235 months, and Nagi's failure to object to the terms of the agreement at the crucial moment of sentencing waived his challenge on this issue. *Id.* at 398–99.

■ To obtain collateral relief based upon errors to which no contemporaneous objection was made, Nagi must show: 1) "cause" excusing his procedural default, and 2) "actual prejudice" resulting from the errors of which he complains.[1] *United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594–95, 71 L.Ed.2d 816 (1982). Nagi blames his failure to object on his trial counsel. In claiming ineffective assistance of counsel in the context of a guilty plea, Nagi must show that his counsel's performance

---

1. While the precise meaning of "prejudice" is somewhat nebulous, it has been interpreted as an infection of the entire proceeding which results in a conviction violative of due process. *Frady,* 456 U.S. at 169, 102 S.Ct. at 1595.

was deficient and that the deficient performance caused Nagi to reach a different decision regarding his plea.[2] *O'Hara v. Wigginton,* 24 F.3d 823, 828 (6th Cir.1994); *see also Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Nagi argues that his trial counsel did not know that the wrong version of the Guidelines was used to calculate his sentence, or if counsel knew, he failed to inform Nagi. *See, e.g., United States v. Day,* 969 F.2d 39, 43 (3d Cir.1992) (holding counsel's failure to communicate plea offer to defendant stated valid claim of ineffective assistance); *United States v. Ford,* 918 F.2d 1343, 1350 (8th Cir.1990) (holding counsel's failure to object to an excessive base offense level was ineffective assistance under *Strickland* ). He asserts that his trial counsel failed to investigate which version of the Guidelines applied and failed to object when the 1988 Guidelines were used to calculate his sentence. Thus, Nagi argues that his counsel's ineffective assistance was sufficient cause to excuse his procedural default.

 The circumstances of the plea bargaining process, however, reveal that Nagi's counsel was not ineffective. The record indicates that one of Nagi's two attorneys knew which version of the Guidelines was used, but did not object because the terms of the plea agreement embodied Nagi's desire to receive a more lenient sentence (specifically 14 to 20 years) than if he did not plead guilty (potentially 30 years to life). Nagi's other counsel, Fink, admitted that he did not know that the wrong version of the Guidelines was used but testified that this was irrelevant to the sentencing range agreed upon:

Q: ... Did you have any specific negotiations with [the AUSA] about which particular version of the guidelines, CCE Guidelines should apply?

A: No, because I don't think that was the crux of our negotiations. I think what we were trying to do was get to a number that we could agree on, find a way to get to a

number. I recall being in a small room with David [Koelzer] and [the AUSA] crunching numbers but it was to try to get to a number.

In determining whether counsel's performance was deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *O'Hara,* 24 F.3d at 828 (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065). Nagi's counsel's strategic decisions to negotiate a lower sentence are difficult to attack:

[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

*Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066. Here, counsel's performance was not deficient because it was based upon a reasonable decision to offer a guilty plea in exchange for a lighter sentence. Misapplication of the Guidelines was irrelevant to Nagi's desire to negotiate a sentence between 14 and 20 years. Thus, Nagi cannot hurdle the first prong of his ineffective assistance of counsel claim.

Neither could Nagi hurdle the second prong of *Strickland* which requires a showing of prejudice. Nagi failed to argue that there was a reasonable probability that, but for his counsel's alleged errors, he would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370–71, 88 L.Ed.2d 203 (1985); *O'Hara,* 24 F.3d at 829 ("the record is devoid of evidence that the result would have been different had the petitioner been represented by other counsel"). Hence, Nagi has not fulfilled the "cause" require-

---

**2.** "Although our decision in *Strickland v. Washington* dealt with a claim of ineffective assistance of counsel in a capital sentencing proceeding, ... the same two-part standard seems to us applicable to ineffective-assistance claims arising out of the plea process." *Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 369–70, 88 L.Ed.2d 203 (1985).

ment in order to excuse his procedural default.

█ Even if Nagi met the first requirement of the procedural default test, he did not show "actual prejudice" resulting from the application of the 1988 Guidelines. Nagi asserts that actual prejudice exists because use of the 1987 Guidelines would have resulted in a sentence much lower than the one he actually received. However, the government maintains that it would not have entered into the plea agreement if Nagi insisted upon such a low sentencing range. Thus, the use of the 1988 Guidelines did not work to Nagi's "actual and substantial disadvantage." *Ratliff v. United States*, 999 F.2d 1023, 1025 (6th Cir.1993) (defining "actual prejudice" prong of procedural default).[3]

█ Finally, Nagi attempts to blame the AUSA and the district court for failing to correct the erroneous application of the 1988 Guidelines. There is no support for Nagi's allegations of misconduct. While the record indicates that the AUSA and Nagi's defense counsel knew there was some question as to the propriety of the 1988 Guidelines, the district court was not apprised of the issue. In the future, counsel for both sides would be wise to discuss such issues with the district court prior to sentencing. Nevertheless, the error in this case was not the result of misconduct, and it is unlikely to be repeated. As a result of the more lenient sentence embodied in the plea agreement and his knowing and voluntary plea itself, Nagi waived any objection he might have had to being sentenced under the 1988 Guidelines. *United States v. Sloman*, 909 F.2d 176, 182 (6th Cir.1990) (finding that agreement with court's course of conduct constitutes waiver).

## IV. Conclusion

In concluding that Nagi's sentence was not unconstitutional, we note that our holding is strictly limited to the facts of this case. The correct version of the Guidelines should ordinarily be used to calculate a defendant's sen-

tence, and we do not advocate plea bargains which supplant the Guidelines or which are made in contravention of the Guidelines. However, in this particular case, we find no violation of the Ex Post Facto Clause because: 1) Nagi made no objection to the version of the Guidelines used to calculate his sentence; 2) Nagi did not show "cause" and "prejudice" excusing this failure to object; 3) Nagi failed to show ineffective assistance of counsel as "cause" because there was neither deficient performance nor prejudice; 4) Nagi's sentence was precisely within the range sought by Nagi himself during the plea negotiations; and 5) Nagi would have been subject to a sentence of 30 years to life had he been convicted of all counts by a jury.

**AFFIRMED.**

DAVID A. NELSON, Circuit Judge, concurring.

It is undisputed that the denial of Mr. Nagi's motion to vacate the sentence must be affirmed unless we conclude that the district court erred in finding that the performance of Mr. Nagi's counsel passed constitutional muster. I see no basis for concluding that the district court erred in this respect.

The district court found as a fact that one of Mr. Nagi's lawyers—David Koelzer, who was taking the lead in the negotiations over the sentence guideline range—knew that the guidelines being used were those applicable to criminal activity taking place after October 15, 1988. The court's finding was supported by probative evidence and, in my view, was not clearly erroneous.

The district court also found as a fact that Mr. Nagi had not continued to participate in the criminal enterprise after October 15. At the time of the negotiation of the plea agreement, however, such a finding could hardly have been characterized as a foregone conclusion. The government was in possession of evidence that Mr. Nagi had attempted to communicate with his coconspirators during the month of October, following his arrest on

---

3. Considering the circumstances, a sentence of 17 years was not a miscarriage of justice. The sentence was at least 13 years lower than if he had been convicted of all counts by a jury. Hence, calculating Nagi's sentence from the

wrong version of the Guidelines was harmless error. *See* Fed.R.Crim.P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.").

September 30, and there was uncontradicted testimony that—in the words of the district court—the Assistant U.S. Attorney who negotiated the plea agreement "believed that even though defendant was in custody as of September 30, 1988 ... defendant continued to conduct activities of the [continuing criminal enterprise] after October 15, 1988, thus making the new guidelines appropriate."

The Assistant U.S. Attorney's belief may well have been wrong, as the district court ultimately found it was, but the existence of that belief was a fact of life as far as Mr. Nagi's lawyer, Mr. Koelzer, was concerned. Mr. Koelzer nonetheless succeeded in persuading the Assistant U.S. Attorney to sign a plea agreement under which Mr. Nagi was to receive a sentence by no means unattractive, from the defense standpoint, under either version of the guidelines.

Against this background, and applying the standards set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and its progeny, the district court concluded that Mr. Nagi had not been denied effective assistance of counsel. I agree—and I concur both in Judge Siler's opinion and in the judgment of affirmance.

KEITH, Circuit Judge, dissenting.

In this case, the majority admits that Nagi was sentenced under the wrong Guidelines but concludes that this was justified because there was some evidence, albeit inconclusive, that Nagi's counsel agreed to the application of the October, 1988, Guidelines. I respectfully dissent from the majority opinion because I believe that allowing a defendant to be sentenced under the wrong Guidelines constitutes a fundamental miscarriage of justice which is contrary to both federal statutory law and Sixth Circuit case precedent.

The law is clear that the ex post facto clause of the Constitution "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Weaver v. Graham,* 450 U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981). In other words, the Guidelines in effect at the time the criminal act occurred must be used for calculating a defendant's sentence. *Miller v. Florida,* 482 U.S. 423, 430–31, 107 S.Ct. 2446, 2451–52, 96 L.Ed.2d 351 (1987). I am not aware of an

exception to this clause which allows the wrong Guidelines to be applied so long as the parties to the action are in agreement as to the appropriate range of sentence.

Indeed, Title 18 U.S.C. § 3553(b) requires a district court to select a sentence from within the applicable Guideline range unless there are specific aggravating circumstances for a departure. If such circumstances exist, the court must state the specific reasons for the departure. 18 U.S.C. § 3553(c)(2). Our Court has adhered to this requirement even when the sentence imposed was within the range specified in the plea agreement between the parties. *See United States v. Newsome,* 894 F.2d 852, (6th Cir.1990) (holding that absent specific aggravating circumstances justifying departure, district court cannot exceed Sentencing Guideline range even though sentence was within range specified by plea agreement).

Here, the district court did not specify any reasons for departure because it was not aware that the wrong Guidelines were being used. Indeed, I can discern from the record that only one party, the United States Attorney, knew for certain that the wrong Guidelines were being used. As an officer of the court, the United States Attorney had a duty to inform the district judge that the correct Guidelines were not being used in calculating Nagi's sentence. Although, the majority found that the sentencing error was not the "result of misconduct," I believe that the United States Attorney's failure to disclose all of the pertinent facts to the district court constituted grave misconduct.

Moreover, in my opinion, the majority's argument that Nagi's punishment was not more severe than the punishment assigned by law to all the crimes committed by Nagi is to no avail. For while it is true that if Nagi had not pled guilty he could have potentially faced a sentence of 30 years to life if he was convicted on all counts, we are prevented from drawing a negative inference from this possibility. Our Constitution demands that we presume Nagi was innocent on all counts to which he did not plead until he was proven guilty beyond a reasonable doubt as to those charges. *See Mullaney v. Wilbur,* 421 U.S. 684, 684, 95 S.Ct. 1881, 1882, 44 L.Ed.2d 508 (1975) (holding that the Due Process Clause of the Fourteenth Amendment requires the

prosecution to prove beyond a reasonable doubt every fact necessary to constitute a crime charged); *see also In re Winship,* 397 U.S. 358, 368, 90 S.Ct. 1068, 1075, 25 L.Ed.2d 368. Thus, it is irrelevant that Nagi could have received a 30 year sentence if the case had gone to trial, the fact of the matter is that he did not go to trial. He pled guilty only to conducting a continuing criminal enterprise and was incorrectly sentenced under that charge.

In short, there is no way to get around the ex post facto error in this case. Title 18 U.S.C. § 3742(f)(1) requires a court of appeals to remand a case for further proceedings if a sentence was "imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines." There is no doubt that Nagi was sentenced under the wrong guidelines. Thus, we are required, pursuant to federal statute and case precedent, to remand this case to the district court for resentencing using the correct Guideline range. If the United States Attorney refutes this range as being too low, then Nagi should be retried. The crucial point is that we simply should not allow a defendant to serve a sentence which is greater than the time allotted for the charge to which he or she has pled guilty. For this reason, I must dissent.