**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Walter J. KUSSMAUL, Defendant–**
**Appellant.**

No. 92–3314.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 9, 1992.

Decided Feb. 18, 1993.

Salvador A. Dominguez (argued and briefed), Office of the U.S. Atty., Columbus, OH, for plaintiff-appellee.

Douglas W. Shaw (argued and briefed), Columbus, OH, for defendant-appellant.

Before: GUY and BATCHELDER, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

BATCHELDER, Circuit Judge.

Defendant-appellant Walter J. Kussmaul appealed his conviction on one count of causing non-mailable matter, in this case obscene pornographic videotapes, to be delivered by mail in violation of 18 U.S.C. § 1461.

I.

In October 1989, using a mailing list obtained from an earlier prosecution of an adult film mail-order company, Government agents sent the appellant, Walter J. Kussmaul, a letter in the company's periodic mailing aimed at attracting the interest of those customers interested in child pornography. The letter informed the recipient that he could write to an outfit in Belgium, "Artiste Internationale," to get information on "extremely hard to find erotica" which the company did not stock "due to certain bans and stateside attitudes." The agent

in charge, Agent Rich of the Customs Service, testified that he included the reference to Belgium and the phrases "hard to find erotica" and "stateside bans" since in his law enforcement experience, child pornographers used such references as "code words" in publicly advertising their wares, which are often produced in Belgium. Agent Rich also noted that this "coded" phrasing would serve to screen out those not interested in obtaining child pornography.

On November 9, 1989, Mr. Kussmaul wrote to the Belgian address asking for a "catalog or list of hard to find erotica." He signed and included, on his own initiative, a preprinted "affidavit" he had cut out of a magazine or catalogue declaring him to be at least age 19 and disclaiming any request to the Post Office to screen "sexually oriented advertisements" addressed to him. In December, a U.S. Customs Service agent received the letter in Belgium at the fake address, and forwarded it to Agent Rich in Florida. To ensure that Mr. Kussmaul would specify his intentions, Agent Rich sent another letter under the "Artiste Internationale" name, explaining that due to "voluminous inventory" the company did not maintain a general catalogue, and that therefore the recipient should inform the company as to exactly the nature of the material he wanted. Again, the agent was careful not to mention pornography or obscenity in the letter. Mr. Kussmaul soon responded to this with another letter specifying his interest in "purchasing VHS tapes and magazines" portraying "Beastiality [sic]– women & animals" "Hard S & M—female submissive" and "teen sex." He also enclosed a copy of his earlier correspondence.

Satisfied that Mr. Kussmaul's prompt and specific responses indicated his willingness and intention to break Federal postal laws, Agent Rich mailed Mr. Kussmaul a catalogue containing explicit descriptions of various magazines and videos, including the age of the actors and the type of sexual activity portrayed. In April of 1990 Mr. Kussmaul ordered two videos, both of which the catalogue described as explicitly depicting children aged nine, twelve, and fourteen engaging in sexual acts with adult men. He enclosed payment by money order in the amount of $99.75. On November 7, 1990, an undercover postal inspector delivered the videotapes received from Agent Rich to Mr. Kussmaul's home, where the defendant accepted the tapes. The Customs Service, assisted by other agents, soon entered and searched Mr. Kussmaul's home. Agents found the delivered tapes in the basement chimney ash cleanout. They also discovered a number of videotapes, of both adult and general nature.

On August 15, 1991, Walter Kussmaul was indicted on two counts of violating the mail laws, one charging him specifically with ordering child pornography, and the second charging him with ordering obscene material through the mail.[1] A jury trial before the Honorable George C. Smith commenced on December 17, 1991, and on December 19, 1991, the jury returned its verdicts, finding the appellant not guilty on Count 1 and guilty on Count 2 of the indictment.

On March 31, 1992, the appellant was sentenced to serve a twelve month term of imprisonment followed by a 3–year period of supervised release to be served upon his release from imprisonment, and ordered to pay a $50 special assessment. The appellant filed a timely notice of appeal.

## II.

■ In defending himself against the two original charges, Mr. Kussmaul argued in the District Court that the Government had entrapped him. Armed with the recent Supreme Court decision in *Jacobson v. United States*, —— U.S. ——, 112 S.Ct.

1. Count One charged the defendant with receiving a package which had been transported and shipped in interstate commerce, knowing the package contained visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2). Count Two charged the defendant with knowingly causing to be delivered by mail, non-mailable matter, that is, a package addressed to the defendant containing two obscene, lewd, lascivious, indecent, filthy and vile videotape recordings, in violation of 18 U.S.C. § 1461.

1535, 118 L.Ed.2d 174 (1992), which held that the Government had entrapped the appellant into ordering child pornography through the mails by means of an intensive sting operation, Kussmaul now vigorously reasserts that argument, claiming entrapment as a matter of law. Although acquitted of the child pornography charge, he notes that the Government aimed its sting operation at child pornography offenders; the Government used the evidence it obtained during the operation to prosecute the mailing of obscenity charge for which Kussmaul ultimately was convicted. For that reason, Kussmaul contends that *Jacobson* remains applicable to the question of entrapment. We agree.[2]

■ The courts must be vigilant in protecting citizens against agents of the Government who "implant in the mind of an innocent person the disposition to commit [a crime] and induce its commission in order that they may prosecute." *Sorrells v. United States*, 287 U.S. 435, 442, 53 S.Ct. 210, 212–13, 77 L.Ed. 413 (1932). At the same time,

> [i]t is well settled that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises.

*Id.* at 441, 53 S.Ct. at 212. The Government must therefore prove beyond a reasonable doubt that a predisposition to commit the particular crime for which the defendant was indicted existed prior to and independent of Government contact with him. *Jacobson*, —— U.S. at ——, —— 112 S.Ct. at 1540, 1541. Predisposition is "the defendant's state of mind before his initial exposure to government agents." *United*

*States v. Johnson*, 855 F.2d 299, 303 (6th Cir.1988).

In *Jacobson*, Government agents maintained continual contact with the defendant corresponding with him and sending him leaflets purporting to be from organizations dedicated to free speech rights, "sexual freedom" and "freedom of choice," which suggested that child pornography, pedophilia and other aberrations should be legalized. *Jacobson*, —— U.S. at ——, 112 S.Ct. at 1542. Only after some two and a half years did the agents provide the defendant with the opportunity to order child pornography through the mail, and then convicted him when he took the bait. The Court held that the jury was left with no way adequately to determine that "petitioner possessed the requisite predisposition prior to the Government's investigation and that it existed independent of the Government's many and varied approaches to petitioner." *Id.*

■ Mr. Kussmaul argues that the Government never should have come after him in the first place. He reads *Jacobson* as holding that the Government's proof of predisposition must be established with evidence obtained prior to its initial contact with the targeted individual, and notes that nothing the Government knew about the film company mailing list suggested that he in particular would be a likely lawbreaker. This reading of *Jacobson* is flawed. As Justice O'Connor stressed in dissent,

> [t]he rule that preliminary Government contact can create a predisposition has the potential to be misread by lower courts as well as criminal investigators as requiring that the Government must have sufficient evidence of a defendant's predisposition *before it ever seeks to contact him.* Surely the Court cannot in-

---

**2.** Judge Guy believes that since the jury acquitted Mr. Kussmaul of the child pornography charge, *Jacobson* has no application here. True, the *Jacobson* court objected to the Government's sting activities in the context of a child pornography sting operation, and such operations evidently are often necessary to "ferret out" this exploitative practice. But nothing in *Jacobson* suggests that overwhelming governmental efforts to get an otherwise innocent person to commit a crime are only forbidden in tracking

down child pornography. In any event, since the sting operation that netted Kussmaul specifically targeted child pornography, at least some of the "ample evidence of predisposition" that Judge Guy finds in the record to deflate Kussmaul's entrapment claim would be just as wrongly obtained if the Government overstepped its bounds, regardless of what specific crime that evidence ultimately proved Kussmaul committed.

tend to impose such a requirement, for it would mean that the Government must have a reasonable suspicion of criminal activity before it begins an investigation, a condition that we have never before imposed.

*Jacobson,* —— U.S. at ——, 112 S.Ct. at 1545 (O'Connor, J., dissenting) (emphasis in original). The law of entrapment treads fine lines; whether Government conduct proves to be entrapment depends largely on the circumstances of its operations. On the one hand, as Justice O'Connor stresses in dissent, the Government does not need to establish a reasonable suspicion of illegal activity before instituting a sting operation, since such a requirement would obviate the need to have such operations. On the other hand, the courts have never allowed the ends to justify the Government's means; agents may not force the hand of a sting target into violating the law, and then claim that only someone predisposed to commit a crime is capable of doing so. *Jacobson* does not prohibit the Government from inducing bad people to commit crimes; it simply strengthens the requirement that the Government prove that its agents did not induce the defendant's criminality. *Jacobson* requires that where a defendant raises entrapment, the Government prove, beyond a reasonable doubt, that the defendant had the inclination to commit the crime with which he is charged, and that his criminal inclination did not possibly result from the seductions of Government agents.

■ Most importantly, the very language of *Jacobson* itself has anticipated and distinguished Mr. Kussmaul's situation and argument. Where the Government simply gives the defendant "an opportunity to commit a crime," and the defendant accommodates by committing a crime, the entrapment claim is unavailable. *Jacobson,* —— U.S. at——, 112 S.Ct. at 1541. In such a case, whether an undercover cop

sells drugs on the street or whether Postal Inspectors conduct an "elaborate 'sting' operation ... the entrapment defense is of little use because *the ready commission of the criminal act amply demonstrates the defendant's predisposition." Id., citing United States v. Sherman,* 200 F.2d 880, 882 (2d Cir.1952) (emphasis added). The Court explained:

> Had the agents in this case simply offered petitioner the opportunity to order child pornography through the mails, and petitioner—who must be presumed to know the law—had promptly availed himself of this criminal opportunity, it is unlikely that his entrapment defense would have warranted a jury instruction.

*Jacobson,* —— U.S. at ——, 112 S.Ct. at 1541, *citing Mathews v. United States,* 485 U.S. 58, 66, 108 S.Ct. 883, 888, 99 L.Ed.2d 54 (1988).

■ The circumstances surrounding the case at bar fit more closely with this hypothetical than with the intense and lengthy Government efforts leading up to Mr. Jacobson's order of child pornography. Agent Rich's sting operation [3] did not exhibit the persistent and overzealous Government pursuit of a reluctant and unresponsive individual over an extended period of time which so offended the *Jacobson* Court. The agents in Operation Straight Lace contacted Mr. Kussmaul three times and received a prompt response to each of those contacts. The agents worded the letters carefully so that only connoisseurs of child pornography would get the "coded" hints and respond voluntarily. None of the letters the agents sent to Mr. Kussmaul suggested that he purchase child pornography or "teen sex" through the mails; he voluntarily and promptly responded to two contacts, including the signed and completed "affidavit" making clear his intent to receive pornography through the mails. He requested a catalogue, and when the

---

**3.** The Postal Inspectors in Ohio and Missouri to whom Agent Rich referred the case after Mr. Kussmaul placed his order for the two child pornography tapes did engage in some of the activities whose overzealous employment the Court decried in *Jacobson,* such as sending Mr. Kussmaul an underground newsletter dedicated to preserving sexual freedom, and soliciting responses regarding his sexual tastes on various questionnaires. However, the inspectors initiated these communications *after* Mr. Kussmaul had ordered the tapes and thus committed the crime; these activities therefore have no bearing on whether Mr. Kussmaul was entrapped.

agents sent him one, he ordered two sexually explicit[4] videotapes through the mail, including full payment for his purchase.

Mr. Kussmaul's "affidavit" is certainly clear evidence of a predisposition to cause the mailing of obscene, nonmailable material, the charge on which the jury ultimately convicted the defendant. Beyond the affidavit's explicit acknowledgement of a willingness to receive pornography, the fact that Mr. Kussmaul enclosed the affidavit with his response to the very first contact by the Government suggests familiarity with the legal niceties of sending away for adult material, and this certainly bolsters the Government's proof of predisposition. In sum, the Government's initial three contacts with Mr. Kussmaul simply offered him the opportunity to cause non-mailable material to be sent to him through the mail, and Mr. Kussmaul evidently needed no urging to take immediate advantage of the opportunity.

Beyond this, Mr. Kussmaul's successful defense strategy against the child pornography charge essentially precludes him from claiming entrapment as a defense to the charge of mailing obscenity. At trial, Mr. Kussmaul acknowledged his interest in "X-rated, sexually explicit movies," and agents seized a collection of such tapes from his home. He professed a familiarity with the film business and claimed frequently to order adult films through the mails.[5] These admissions further show Mr. Kussmaul's predisposition to use the mails to purchase obscene material.

The Government need only prove that its agents did not put the idea in the defendant's head to "do[ ] an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended." *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954). This the Government has accomplished. Since "[r]ational jurors could ... say beyond a reasonable doubt that [the defendant] possessed the requisite predisposition prior to the Government's investigation and that it existed independent of the Government's ... approaches to [him]," *Jacobson,* —— U.S. ——, 112 S.Ct. at 1543, we affirm Mr. Kussmaul's conviction.

### III.

■ Mr. Kussmaul also assigns as error the District Court's sentencing him under the Sentencing Guidelines which were in effect on the date of sentencing rather than the Guidelines which were in effect at the time he committed the offense of which he was convicted. Our review of this issue requires that we determine first, on what date the offense was committed, and second, since 18 U.S.C. § 3553(a)(4) requires that the sentencing court is to apply the Guidelines in effect on the date of sentencing, whether in this case the application of the Guidelines as they existed on the later date offends the *ex post facto* clause of the Constitution. For the reasons which follow, we hold that Mr. Kussmaul must be resentenced under the September 1989 Sentencing Guidelines, which were in effect on April 3, 1990, the day he ordered the two pornographic tapes in question.

The Government argues that the indictment charged the defendant with commit-

4. Whether the defendant knew that the videos he expected Artiste Internationale to send him were obscene by legal definition does not matter for the purpose of the Government's proof of conviction. "[Under 18 U.S.C. § 1461, i]t is constitutionally sufficient that the prosecution show that a defendant had knowledge of the contents of the materials he distributed, and that he knew of the character and nature of the materials." *Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974). This knowledge may be proven by circumstantial evidence, for example that the person ordering the material knew it contained sexually explicit conduct or that he was a regular consumer of

such materials. *United States v. Hurt,* 795 F.2d 765, 773–74 (9th Cir.1986), *amended, rehearing denied, en banc,* 808 F.2d 707 (9th Cir.), *cert. denied,* 484 U.S. 816, 108 S.Ct. 69, 98 L.Ed.2d 33 (1987) *(following Hamling).*

5. While it is true that private possession of sexually explicit material featuring adults is deemed to be a constitutional right, *see Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), Mr. Kussmaul was convicted of using the mails illegally, not of possessing obscene material.

ting the offense on November 7, 1990, the date upon which the delivery of the tapes was made by the postal inspectors,[6] and further argues that because the jury convicted him on that count, the defendant may not now be heard to challenge that offense date. However, the wording of the indictment does not, as a matter of law, mean that, for purposes of sentencing, Mr. Kussmaul committed the crime on November 7, 1990, given the facts upon which the jury convicted him. Minor ambiguity in the wording of the indictment does not render the resulting verdict void. *See United States v. Rodriguez–Ramirez,* 777 F.2d 454, 459 (9th Cir.1985) (where indictment charged defendant with conspiracy "beginning at a time unknown to the Grand Jury, and continuing to and including October 7, 1983," defects alleged were "of minor consequence and not prejudicial.") So long as the indictment "provided sufficient notice to [the] defendant[ ] of the nature of the charges," the precision of the wording is of no consequence on appeal. *Id.* Here, the evidence clearly demonstrated that the November 7, 1990, delivery was caused by defendant's ordering the videos in April of 1990.

The Government also relies on *United States v. Kuennen,* 901 F.2d 103 (8th Cir. 1990) in defending the District Court's application of the Sentencing Guidelines. This reliance is misplaced. In *Kuennen,* the defendant mailed pornography in June of 1984. Customs officials intercepted the material, and later replaced it in the mail in March, 1985. *Kuennen,* 901 F.2d at 104. The defendant argued that the element of causation necessary to prove a violation of 18 U.S.C. § 1461 could not be proven, since the customs service, not he, ultimately "caused" the material to be delivered. *Id.* The court held that the defendant's act of ordering the material constituted the prohibited conduct, drawing the analogy to cases arising under similar mail laws:

"[When] one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." *Id.* at 105, quoting *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954). Since placing the order would reasonably and foreseeably have led to the mails' being used to deliver the prohibited obscenity, "the delay between the interception of the package and its delivery is not relevant to the question of causation." *Kuennen,* 901 F.2d at 105. Thus, 18 U.S.C. § 1461, the law under which Mr. Kussmaul was convicted, prohibits the act which causes delivery, not the delivery itself. Logically, then, the date of delivery is irrelevant to the date of commission of a § 1461 violation, since it is the act of ordering obscene material which constitutes the offense.

> Because the statute is to punish for the use of the mails, ... we join the Sixth and Ninth Circuits in holding that the statute reaches persons who order obscene materials for personal use, and thus cause the mails to be used for the delivery of those materials.

*United States v. Carmack,* 910 F.2d 748 (11th Cir.1990), *following United States v. Johnson,* 855 F.2d 299 (6th Cir.1988) and *United States v. Hurt,* 795 F.2d 765 (9th Cir.1986).

The *ex post facto* clause in the Constitution "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). The clause demands that where Congressional revision of the Federal Sentencing Guidelines "changes the legal consequences of acts completed before its effective date" to the detriment of the convict, the Guidelines

---

**6.** The indictment for which Mr. Kussmaul was convicted reads:
> On or about November 7, 1990, in the Southern District of Ohio, WALTER J. KUSSMAUL did knowingly cause to be delivered by mail, according to the direction thereon, nonmailable matter, that is, a certain package ad-

dressed to Walter J. Kussmaul ... containing two (2) obscene, lewd, lascivious, indecent, filthy, and vile videotape recordings, in violation of 18 U.S.C. § 1461.

We note that Mr. Kussmaul does not challenge the sufficiency of the indictment.

in effect at the time of the criminal act must be applied. *Miller v. Florida,* 482 U.S. 423, 431, 107 S.Ct. 2446, 2451–52, 96 L.Ed.2d 351 (1987).

Section 2G3.1 of the Sentencing Guidelines applies to "Importing, Mailing, or Transporting Obscene Matter" in violation of 18 U.S.C. §§ 1460–63 and 1465–66. The base offense level at the time of Mr. Kussmaul's sentence was 6. Effective November 1, 1990, Congress amended this section by adding a "cross reference" to § 2G2.2, which among other things applies to "Trafficking in Material Involving the Sexual Exploitation of a Minor." The amendment requires that where the violation of §§ 1460–63 or 1465–66 involved "transporting, distributing, receiving, possessing, or advertising to receive material involving the sexual exploitation of a minor," the sentencing court should instead apply § 2G2.2, which imposes a base offense level of 13.[7] Thus, the application of the revised Guidelines to Mr. Kussmaul has imposed more severe punishment on the criminal act he committed on April 3, 1990, than was prescribed under the Guidelines in effect at the time. Since this application violates the *ex post facto* clause, Mr. Kussmaul must be resentenced using the base offense level of 6 which was in effect on April 3, 1990.

Since the Government produced sufficient evidence from which a rational jury could find beyond a reasonable doubt that prior to the Government's acts and independent of them, Mr. Kussmaul was predisposed to commit the crime for which he was convicted, and thus that he had not been entrapped, we affirm his conviction for causing obscenity to be mailed under 18 U.S.C. § 1461.

However, since the District Court erred in applying the Sentencing Guidelines in effect on November 7, 1990, when the Government delivered the videotapes to Mr. Kussmaul, rather than those in effect on April 3, 1990, when he ordered them, and since the later Guidelines substantially increase the base offense level applicable to this crime, Mr. Kussmaul's sentence is vacated and this case is remanded to the District Court for resentencing consistent with this opinion.

---

**7.** While we share Judge Guy's concern that the application of the cross reference makes irrelevant the defendant's acquittal on the child pornography charge, we cannot agree with his reasoning in regard to the applicability in these circumstances of the Sentencing Guidelines' cross-reference for offenses involving the exploitation of children. Judge Guy believes that the District Court erred in applying the cross-reference because "the offense of conviction did not involve a charge implicating minors or their sexual exploitation ..." However, Guideline § 2G3.1(c)(1), the cross-reference at issue here, says:

> If the offense involved transporting, distributing, *receiving,* possessing, or advertising to receive *material involving the sexual exploitation of a minor,* apply § 2G2.2 (Transporting, Receiving, or Trafficking in Material Involving the Sexual Exploitation of a Minor) [emphasis added]

The cross-reference does not say that the offense of conviction must involve the actual exploitation of minors. Thus it is clear that the manifest purpose of the cross-reference is to look to the content of the materials mailed in order to determine the offense level to be applied. In 1990, Congress added that cross-reference to § 2G3.1, the Guideline be used in sentencing persons convicted of the offense of mailing non-mailable matter under 18 U.S.C. § 1461. Where that non-mailable matter is material involving the sexual exploitation of a minor, as it was here, the cross-reference applies. This cross-reference essentially applies the same sentencing levels to those who specifically intend to mail child pornography and are subsequently convicted under 18 U.S.C. § 2252(a)(2)(A), and those who specifically intend to transport or receive through the mails non-mailable matter and are convicted under 18 U.S.C. § 1461 for sending or receiving material which happens to be child pornography.

Were Judge Guy's analysis correct, this cross-reference could *never* have any proper application, since none of the offenses prohibited under § 1461 entails the actual sexual exploitation of minors. Appendix C, Amendment 326 of the *United States Sentencing Commission Guidelines Manual* (incorporating guideline amendments effective November 1, 1990) explains unambiguously that "[t]his amendment [to § 2G3.1(c)] inserts a cross reference to § 2G2.2 for offenses involving materials which, in fact, depict children to ensure that the penalties for such offenses adequately reflect their seriousness...." We must assume that Congress intended precisely the result to which Judge Guy objects, *viz.,* that prosecutors should "have it both ways."

RALPH B. GUY, Jr., Circuit Judge, concurring in the result.

Although I concur in the result reached in this case, my analysis differs somewhat from Judge Batchelder's.

As to the entrapment issue, it cannot be gainsaid that *Jacobson* makes this a close case. This is particularly true if, as the minority in *Jacobson* claims, the majority has redefined predisposition. I find it unnecessary to explore this issue, however, since Kussmaul was acquitted by the jury on the child pornography charge. I, of course, have no way of knowing whether the jury found entrapment or some other fatal defect in the prosecution's case, but, for whatever reason, Kussmaul was found not guilty.

The acquittal on the child pornography charge is central to my analysis because child pornography was the *only* focus of the sting. If a seed was planted and nurtured by the government that allegedly led defendant to commit a criminal act, that act would have been causing child pornography to be shipped in interstate commerce, in violation of 18 U.S.C. § 2252(a)(2)(A). However, defendant was convicted only on the related but very different charge of causing to be delivered by mail obscene material, in violation of 18 U.S.C. § 1461.

In short, although I find arguable merit to defendant's arguments as they relate to his predisposition to order and possess child pornography, I find the record replete with ample evidence of predisposition to support his conviction under § 1461.

The sentencing issue raised by defendant revolves around the fact that the sentencing guidelines provided a more severe penalty for certain obscenity offenses in 1991 than they did earlier.[1] Defendant argues that he placed his order for the pornographic video tapes on May 4, 1990, and that should be the date that controls. Defendant alternately argues that the only reason the tapes were not delivered to him during a time frame covered by the more lenient guidelines was that the government, on its own, elected to delay the delivery until a few days after the 1991 guidelines became effective.[2]

I find it unnecessary to resolve the issue as framed by the parties because I conclude the district court erred in applying the cross-reference provision of U.S.S.G. § 2G3.1(c)(1). This section reads:

If the offense involved transporting, distributing, receiving, possession, or advertising to receive material involving the sexual exploitation of a minor, apply § 2G2.2 (Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving, Transporting, Advertising, or Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic) or § 2G2.4 (Receipt or Possession of Materials Depicting a Minor Engaged in Sexually Explicit Conduct), as appropriate.

In this case, although the government's whole effort was directed at securing a child pornography conviction, a little insurance was taken out by adding the § 1461 general obscenity count.[3] Guideline section 2G3.1(c)(1) specifies that if the *offense*

---

1. The pre–1991 base offense level was 6. Post–1991, the base offense level for child pornography is 10.

2. The 1991 guideline amendments became effective November 1, 1991. The controlled delivery was made November 7, 1991.

3. Count 1, the child pornography count, reads:

    On or about November 7, 1990, in the Southern District of Ohio, WALTER J. KUSSMAUL did knowingly receive a package which had been transported and shipped in interstate commerce to the State of Ohio, addressed to Walter J. Kussmaul, 1214 Denman Avenue, Coshocton, Ohio 43812, knowing said

package contained a video cassette constituting visual depictions of minors engaged in sexually explicit conduct.

   In violation of 18 U.S.C. § 2252(a)(2) and 18 U.S.C. § 2.

Count 2, the general obscenity count, by contrast, charged:

    On or about November 7, 1990, in the Southern District of Ohio, WALTER J. KUSSMAUL did knowingly cause to be delivered by mail, according to the direction thereon, nonmailable matter, that is, a certain package addressed to Walter J. Kussmaul, 1214 Denman Avenue, Coshocton, Ohio 43812, containing two (2) obscene, lewd, lascivious, indecent, filthy and vile videotape recordings.

   In violation of 18 U.S.C. § 1461.

involved the sexual exploitation of a minor, cross referencing to other guideline sections is mandated. Here, the *offense* of conviction did not involve a charge implicating minors or their sexual exploitation at all. The government cannot have it both ways. The indictment either charged two separate and distinct offenses or was duplicitous. To cross-reference under section 2G3.1 would be to nullify the jury verdict of acquittal on the child pornography count. This is not permissible.