19 F.3d 1434
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Earl J. DUDEK, Defendant-Appellant.
 No. 93-3716.
 United States Court of Appeals, Sixth Circuit.
 April 7, 1994.
 
 Before: MILBURN and GUY, Circuit Judges; and TIMBERS, Senior Circuit Judge.*
 PER CURIAM.
 
 
 1
 Defendant Earl J. Dudek appeals the sentence imposed by the district court following his guilty plea convictions to two counts of bank fraud in violation of 18 U.S.C. Sec. 1344. On appeal, the issues presented are (1) whether the "one book" rule of United States Sentencing Guidelines ("U.S.S.G.") Sec. 1B1.11(b)(2), p.s. (Nov. 1992), is binding and should have been followed by the district court at sentencing; and (2) whether the district court's use of the "one book" rule under the guidelines deprived the defendant of the benefit of his plea agreement with the government.[1] Upon due consideration of the briefs and record filed herein, this panel unanimously agrees that oral argument is not needed. Federal Rule of Appellate Procedure 34(a) and Rule 9(a), Rules of the Sixth Circuit.
 
 I.
 A.
 
 2
 On May 14, 1992, defendant was one of the three co-defendants indicted by a federal grand jury. Defendant was charged in five counts of the indictment; namely, two counts of bank fraud in violation of 18 U.S.C. Sec. 1344 (Counts 1 and 2 of the indictment) and three counts of money laundering in violation of 18 U.S.C. Sec. 1957(a) (Counts 3, 4, and 11 of the indictment).
 
 
 3
 On October 26, 1992, defendant pled guilty to counts 1 and 2 of the indictment pursuant to a written plea agreement under Federal Rule of Criminal Procedure 11. The written plea agreement was signed by the parties and made a part of the record. Thereafter, a presentence investigation report was prepared by the United States Probation Office, and defendant's sentencing was deferred pending the outcome of his co-defendants' cases. On January 11, 1993, one of the co-defendants, Richard E. Harris, also entered a guilty plea. On January 15, 1993, the remaining co-defendant, Larry A. Miller, was acquitted after a jury trial.
 
 
 4
 On March 5, 1993, defendant filed a motion to withdraw his guilty plea under Fed.R.Crim.P. 32(d). Following a hearing on the motion on June 9, 1993, the district court denied the motion to withdraw the plea.
 
 
 5
 At that same hearing, on June 9, 1993, the district court proceeded to sentence defendant. He was sentenced to 15 months' incarceration, to be followed by two years of supervised release. This timely appeal followed.[2]
 
 B.
 
 6
 The substance of defendant's Rule 11 plea agreement with the government was recited into the record at the change of plea hearing on October 26, 1992. The plea agreement provided that defendant would plead guilty to Counts 1 and 2 of the indictment, would not seek a downward departure from the sentencing guidelines, and would be debriefed by the government about his involvement in the scheme to defraud First Federal Savings and Loan of Toledo, Ohio, prior to his sentencing. In exchange, the government agreed to dismiss Counts 3, 4, and 11 of the indictment, not to seek an upward departure from the sentencing guidelines, and to recommend two reductions under the guidelines. Specifically, the government agreed to recommend a two-level reduction in defendant's total offense level under U.S.S.G. Sec. 3B1.2, and to recommend that under U.S.S.G. Sec. 3E1.1, "the defendant's offense level be reduced by the maximum permitted by law as an adjustment for acceptance of responsibility." J.A. 20.
 
 
 7
 The plea agreement had initially stated that the government would recommend a two-level reduction for acceptance of responsibility. However, because the November 1992 guideline amendments were due to be issued within a few weeks and because it was expected that the amendments would allow a three-level reduction for acceptance of responsibility under U.S.S.G. Sec. 3E1.1, the agreement was amended, by interlineation, to change the term "two levels" to read "the maximum permitted by law." J.A. 20.
 
 
 8
 This change was also placed on the record at the change of plea hearing:
 
 
 9
 THE COURT: ... And the plea will be to counts 1 and 2, will be two points for acceptance of responsibility?
 
 
 10
 U.S. ATT'Y: Or more if the law allows more at the time.
 
 
 11
 * * *
 
 
 12
 DEFENSE COUNSEL: I think, Your Honor, that that's a general understanding of it, that there are the two points for acceptance of responsibility. I think those are the two he refers to.
 
 
 13
 And we have--as [the U.S. Att'y] said, we anticipate a change in the law the next week or so--which may even garner him another point and then the other two points for minimal planning.
 
 
 14
 J.A. 40, 42 (emphasis added).
 
 
 15
 Further, at the plea hearing, the defendant acknowledged, under questioning by the court, that this was his understanding of the plea agreement and that there were no additional promises that had been made to induce him to plead guilty. Defendant was further told by the court that this was a guideline case and that the precise sentence in the case would not be determined until the presentence investigation report had been prepared and the court and parties had an opportunity to review it. Defendant was further advised that the plea agreement was simply a recommendation and that the court was not bound by the recommendation. Finally, the defendant was advised, and acknowledged his understanding, that if the court did not follow the recommendation in the plea agreement, that would not constitute a reason for the defendant to withdraw his guilty plea.
 
 
 16
 Subsequently, the 1992 version of the Guidelines was issued. However, in preparing the presentence report, the probation department calculated the guideline range using the version of the Sentencing Guidelines in effect at the time of the commission of the offense, the 1987 Guidelines book, and not the one in effect at the time of sentencing, the 1992 Guidelines book. Under the 1992 Guidelines book, the version which became effective November 1, 1992, defendant would have received a sentence greater than that which he would have received using the 1987 version of the Guidelines.
 
 
 17
 Under the 1987 version of the Guidelines, the maximum allowable reduction for acceptance of responsibility was two offense levels, as opposed to a maximum allowable reduction of three offense levels for acceptance of responsibility under the 1992 version of the Guidelines. However, another amendment to the 1992 version of the Guidelines also increased defendant's total offense level under the relevant conduct provisions, as compared to the 1987 version of the Guidelines.[3] Thus, under the 1987 version of the Guidelines, the applicable sentencing guideline range was 15 to 21 months' incarceration, but under the 1992 version of the Guidelines, the applicable sentencing guideline range was 21 to 27 months' incarceration.[4]
 
 
 18
 Some months after the presentence investigation report had been prepared, defendant filed his motion to withdraw his guilty plea, claiming that he had been misled into pleading guilty based upon his belief that he would definitely receive a three-level reduction for acceptance of responsibility. According to defendant, he believed that the three-level reduction for acceptance of responsibility would result in a sentencing guideline range of ten months, which would make him eligible for split sentencing; i.e., a sentence split between probation and community confinement, home detention or intermittent confinement, see U.S.S.G. Sec. 5B1.1.
 
 
 19
 After denying defendant's motion to withdraw his guilty plea, the district court then sentenced defendant to 15 months' incarceration, based upon the 1987 version of the Guidelines. Thus, defendant received a two-level, rather than a three-level, reduction to his offense level for acceptance of responsibility under U.S.S.G. Sec. 3E1.1.
 
 II.
 
 20
 Defendant argues that the district court erred in applying the "one book" rule of U.S.S.G. Sec. 1B1.11(b)(2), p.s., at his sentencing. Specifically, defendant argues that since Sec. 1B1.11(b)(2) is a policy statement, as opposed to a guideline, it is not binding on a district court at sentencing. However, in Williams v. United States, 112 S.Ct. 1112, 1119 (1992), the Supreme Court stated that where "a policy statement prohibits a district court from taking a specified action, the statement is an authoritative guide to the meaning of the applicable guideline." Subsequently, in Stinson v. United States, 113 S.Ct. 1913, 1917 (1993), the Court stated that "[t]he principle that the Guidelines Manual is binding on federal courts applies as well to policy statements." See also United States v. Lewis, 998 F.2d 497, 499 (7th Cir.1993):
 
 
 21
 While we may have been previously inclined to accept the proposition that policy statements are merely advisory, notwithstanding the language in Williams v. United States, --- U.S. ----, ----, 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341 (1992), this view has been explicitly rejected by the Supreme Court's recent decision in Stinson v. United States, --- U.S. ----, 113 S.Ct. 1913, 123 L.Ed. 598 (1993). In reaching its holding that Sentencing Guideline commentary is binding, unless contrary to statute or the Guidelines themselves, the Court had the following to say about policy statements: "The principle that the Guidelines Manual is binding on federal courts applies as well to policy statements." Id. at ----, 113 S.Ct. at 1917.
 
 
 22
 Furthermore, the case of United States v. Cohen, 965 F.2d 58 (6th Cir.1992), which is relied upon by defendant, is distinguishable from this case. In Cohen, this court held that the policy statements in Chapter 7 of the Guidelines Manual, which deal with the range of imprisonment applicable upon revocation of supervised release, were not binding on the district courts but were merely advisory. Id. at 61. However, Cohen was issued after the Supreme Court's decision in Williams, but before the Court's decision in Stinson, and Cohen, the viability of which is doubtful, applies only to policy statements in Chapter 7 of the Guidelines Manual which are not applicable to this case.
 
 
 23
 Thus, the language in U.S.S.G. Sec. 1B1.11(b)(2), p.s., was binding on the district court in this case. The language of Sec. 1B1.11(b)(2), p.s., affirmatively prohibited the district court from taking a specified action; namely, applying different sections from different versions of the Guidelines Manual in calculating the sentencing guideline range applicable to defendant.[5]
 
 B.
 
 24
 Defendant also argues that he was deprived of the benefit of his plea agreement with the government. Specifically, he asserts that in order to receive the benefits of his plea bargain; i.e., his claimed belief that he was definitely going to receive a three-level reduction for acceptance of responsibility, his case should be remanded for resentencing and the district court should be ordered to give him a three-level reduction for acceptance of responsibility. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration [for the plea], such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971).
 
 
 25
 Generally speaking, "a court is required to apply the guidelines, including, 'any pertinent policy statement issued by the Commission,' that are in effect on the date the defendant is sentenced." United States v. Saucedo, 950 F.2d 1508, 1513 (10th Cir.1991) (quoting 18 U.S.C. Secs. 3553(a)(5)(a)(4)). However, the Ex Post Facto Clause of the Constitution prohibits retroactive application of a changed guideline where the change would disadvantage a defendant. Id. Thus, where revision of the Sentencing Guidelines " 'changes the legal consequences of acts complete before its effective date' to the detriment of the [defendant], the Guidelines in effect at the time of the criminal act must be applied." United States v. Kussmaul, 987 F.2d 345, 351-52 (6th Cir.1993) (quoting Miller v. Florida, 482 U.S. 423, 431 (1987)).
 
 
 26
 As noted above, the district court properly applied the "one book" rule of U.S.S.G. Sec. 1B1.11(b)(2) and calculated defendant's sentencing guideline range under both the 1987 version of the Guidelines, the version applicable at the time of the offense, and the 1992 version of the Guidelines, the version applicable at the time of sentencing. In this case, a substantive change in the 1992 Guidelines worked to the detriment of defendant, since the change resulted in a higher sentencing guideline range than did the 1987 version of the guidelines. Thus, the district court properly sentenced defendant under the 1987 version of the Guidelines, which produced the more lenient result.
 
 
 27
 Finally, contrary to defendant's assertion, he had no legitimate expectation that he was definitely going to receive a three-level reduction for acceptance of responsibility. The plea agreement did not state that defendant was to receive a three-level reduction for acceptance of responsibility. Rather, it stated only that he would receive the maximum reduction permitted by law. Further, at the change of plea hearing, the court went to great lengths to emphasize that the recommendations for reductions in defendant's offense level made by the government pursuant to the plea agreement were only recommendations and were not binding on the district court. Thus, contrary to defendant's assertions, he was not deprived of the benefit of his plea agreement with the government. In this case, defendant was sentenced under the 1987 version of the Sentencing Guidelines, the version of the guidelines in effect at the time of the offense, which produced the lower sentencing guideline range. Further, defendant was given a two-level reduction for acceptance of responsibility, the maximum reduction for acceptance of responsibility permitted under the 1987 version of the Guidelines.
 
 III.
 
 28
 For the reasons stated, we conclude that there was no error in the proceedings below, and accordingly AFFIRM the district court's judgment of sentence. Rule 9(b)(3), Rules of the Sixth Circuit.
 
 
 
 *
 Honorable William H. Timbers, Senior United States Circuit Judge for the Second Circuit, sitting by designation
 
 
 [1]
 In his initial brief on appeal, the defendant also challenged, as an abuse of discretion, the district court's denial of his motion to withdraw his guilty plea under Federal Rule of Criminal Procedure 32(d). However, in his reply brief, defendant waived this issue, stating:
 Defendant-appellant ("defendant") hereby withdraws that part of his prayer asking this Court to reverse the decision of the trial court and allow him to withdraw his guilty plea. He continues to pray for the alternate remedy he originally requested--specific performance of the government's plea bargain.
 As he has maintained all along, the government's refusal to recommend a three-point reduction in offense level for exceptional acceptance of responsibility pursuant to Sec. 3E1.1(b), U.S.S.G., violated the terms of that agreement. Accordingly, he now modifies his prayer solely to request a new sentencing proceeding at which the government will keep its bargain and recommend that the "offense level be reduced by the maximum permitted by law as an adjustment for acceptance of responsibility" (R. 36), and that the three-point reduction be held permissible.
 Reply Brief for Appellant at 1.
 
 
 [2]
 The district court's criminal judgment and commitment order was entered on the district court's docket sheet on June 14, 1993. Defendant filed his notice of appeal on June 28, 1993, beyond the ten-day appeals period set forth in Federal Rule of Appellate Procedure 4(b)
 However, Rule 4(b) permits a district court to extend the time for filing a notice of appeal based upon a showing of excusable neglect by the defendant. See United States v. Wrice, 954 F.2d 406 (6th Cir.), cert. denied, 112 S.Ct. 2286 (1992). On November 9, 1993, the district court entered an order finding that defendant's notice of appeal was filed four days late due to excusable neglect and should be considered timely filed. Subsequently, on December 7, 1993, this court entered an order concluding that under the circumstances of this case, this court had jurisdiction over defendant's appeal.
 
 
 [3]
 The probation department calculated defendant's sentencing guideline range under the 1987 version of the Guidelines and the 1992 version of the Guidelines using the "one book" or "whole book" rule which was added to the Guidelines, as part of the 1992 amendments, as U.S.S.G. Sec. 1B1.11(b)(2), p.s. U.S.S.G. Sec. 1B1.11(b)(2) (Nov. 1992) states:
 The Guidelines Manual in effect on a particular date shall be applied in its entirety. The court shall not apply, for example, one guideline section from one edition of the Guidelines Manual and another guideline section from a different edition of the Guidelines Manual. However, if a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes.
 The commentary to this subsection of the guidelines also provides:
 Subsection (b)(2) provides that if an earlier edition of the Guidelines Manual is used, it is to be used in its entirety, except that subsequent clarifying amendments are to be considered.
 U.S.S.G. Sec. 1B1.11, p.s., comment. (n. 1) (Nov. 1992).
 
 
 [4]
 Defendant does not challenge the correctness of the calculations under either the 1987 version of the Guidelines or the 1992 version of the Guidelines
 
 
 [5]
 Furthermore, we note that the "one book" or "whole book" rule had been followed by the courts even before U.S.S.G. Sec. 1B1.11(b)(2), p.s. was added to the 1992 Guidelines Manual. See United States v. Stephenson, 921 F.2d 438, 441 (2d Cir.1990):
 The Sentencing Commission intended the Guidelines to be applied as a "cohesive and integrated whole." United States v. Kikumura, 918 F.2d 1084, 1109 (3d Cir.1990); see United States Sentencing Commission, Guidelines Manual Sec. 1B1.1 (Nov. 1987) ("Guidelines Manual"); see also United States v. Lawrence, 916 F.2d 553, 555 (9th Cir.1990) ("By allowing the guidelines to take effect, Congress has sanctioned the approach of the Commission, which, as expressed by the Commission's 'Application Instructions' of Sec. 1B1.1, requires that the guidelines be read as a whole."). Applying various provisions taken from different versions of the Guidelines would upset the coherency and balance the Commission achieved in promulgating the Guidelines. Such an application would also contravene the express legislative objective of seeking uniformity in sentencing.