23 F.3d 409
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas Anthony SMITH, Defendant-Appellant.
 No. 93-5953.
 United States Court of Appeals, Sixth Circuit.
 April 28, 1994.
 
 Before: KEITH and NELSON, Circuit Judges, and JOINER, Senior District Judge.[1]
 PER CURIAM.
 
 
 1
 This is an appeal from a conviction and sentence for extortion under color of official right, a violation of 18 U.S.C. Sec. 1951. The defendant, a Kentucky state legislator, was accused of accepting cash in return for promising to help a convict obtain early release from prison. The main issues with respect to the defendant's conviction involve the defense of entrapment and a contention that certain incriminating statements should not have been admitted into evidence. The defendant also challenges his sentence under the United States Sentencing Guidelines, contending among other things that there should have been a downward departure from the guideline sentencing range. Finding neither the entrapment defense nor any of the defendant's remaining contentions persuasive, we shall affirm the conviction and the sentence.
 
 
 2
 * Clifford Brown, a convicted drug dealer, and his wife, Theresa Brown, began working as informants for the Federal Bureau of Investigation in 1990. The Browns told the FBI that they had previously paid bribes to people who claimed to be able to influence the disposition of a pending drug charge against Mr. Brown in a Kentucky state court. Harold Partin, one of the people who was said to have accepted bribe money, told Theresa Brown that newly-elected State Representative Thomas Smith, the defendant in this case, was going to help Partin obtain Clifford Brown's release after Smith took office.
 
 
 3
 Without the knowledge of the FBI, Theresa Brown approached Thomas Smith's father, Jack Smith, and told him about her husband's legal problems. Jack Smith, the owner of a jewelry store patronized by Mrs. Brown, told her that his son might be able to help. Jack Smith telephoned Thomas, the son, to set up an appointment for her.
 
 
 4
 Theresa Brown contacted the FBI and was fitted with a recording device for her meeting with Thomas Smith. The Browns subsequently recorded several conversations with Thomas Smith.
 
 
 5
 Mrs. Brown met with Thomas Smith for the first time on January 22, 1991. During this visit Mrs. Brown told of paying off Harold Partin and others without getting anything for it. She said she could pay more if need be, but she did not offer defendant Smith any money.
 
 
 6
 At their next meeting, which took place on January 26, Mr. Smith suggested that Mrs. Brown and her husband could help themselves by making a campaign contribution to Congressman Larry Hopkins, who was running for governor. Mr. Smith, who was Hopkins' Knox County campaign chairman, expressed himself on this subject as follows:
 
 
 7
 "It wouldn't hurt to make a contribution [to Hopkins' campaign] because he can grant a pardon. And also he can make a recommendation for early dismissal--after he served a little bit of time--early parole. It wouldn't hurt for us to get in the front door there. Now, this would be money that would help you in the long run. Now, I don't know how you are moneywise, but evidently you have some to push around a little bit."
 
 
 8
 On February 11, 1991, Mr. Smith accepted a contribution of $3,750 from Mrs. Brown. As requested by Mr. Smith, the contribution was made in cash. Mr. Smith testified at trial that "[i]t didn't take a lot of persuasion to take the campaign contribution--because I was raising money at the time." He admitted telling FBI agents that he did not turn this money over to the campaign.
 
 
 9
 Clifford Brown was released from state prison in due course. Thomas Smith then called him and suggested that Brown set aside $6,000 to $10,000 for Smith to use in helping Brown obtain early parole on a pending federal charge. Smith told the Browns that he would use the money to pay government officials for helping to obtain Mr. Brown's early release. It was Mr. Smith who suggested the payment, not the Browns.
 
 
 10
 On April 15, 1991, the Browns delivered $2,500 to Mr. Smith. On June 11, 1991, they delivered an additional $7,500. The latter payment was made in a bugged motor home provided by the FBI.
 
 
 11
 Once the $7,500 had been accepted by Mr. Smith, four FBI agents entered the home and confronted him there. They told him that they had a search warrant for his person, and they demanded the money back. They did not charge him with any crime or tell him that he was under arrest, nor did they give him a Miranda warning. Mr. Smith admitted taking money from the Browns, admitted assisting Brown's parole efforts, and confessed that he had used some of the money for his own personal expenses.
 
 
 12
 On June 12, 1991, Thomas Smith met again with FBI agents, this time at his request. The agents asked for Smith's cooperation in gathering evidence against others in the Kentucky Legislature. Smith agreed, and his cooperation lasted for over a year. In September of 1992 a federal grand jury indicted Mr. Smith on three counts of extortion under color of official right--one count for each of the occasions on which he had accepted money from the Browns. He was also indicted on one count of obstruction of justice.
 
 
 13
 Prior to trial the United States filed a motion in limine to prevent Mr. Smith from disclosing the details of his post-crime cooperation with the government. The court granted the government's motion. United States v. Smith, 817 F.Supp. 1366 (E.D.Ky.1993).
 
 
 14
 At the time of trial Smith moved to suppress the statements he had made in the motor home on June 11, arguing that he had not been read his Miranda rights and that the FBI had coerced him through promises of leniency. The district court denied the motion. At the end of the proofs Mr. Smith requested certain jury instructions on the defense of entrapment. The court did not adopt Smith's proposed instructions in toto, but gave a charge on entrapment the substance of which came fairly close to what Smith had requested.
 
 
 15
 The jury acquitted Mr. Smith on count one (the count dealing with the acceptance of money on February 11) but found him guilty on the counts that dealt with the acceptance of money on April 15 and June 11. Mr. Smith was acquitted on the obstruction of justice charge. After denying a motion for a new trial, the district court sentenced Mr. Smith to imprisonment for 27 months, a term within the range prescribed by the sentencing guidelines.
 
 II
 
 16
 * Mr. Smith argues on appeal that he should have prevailed on his entrapment defense as a matter of law. We are not persuaded.
 
 
 17
 "The question of entrapment is generally one for the jury, rather than for the court." Mathews v. United States, 485 U.S. 58, 63 (1988). For a court to find entrapment as a matter of law, the
 
 
 18
 " 'testimony and facts must be undisputed; a court may not choose between conflicting testimony or make credibility determinations. Furthermore, the undisputed evidence must demonstrate a "patently clear" absence of predisposition. If either of these elements is missing, then the predisposition question is for the jury to decide.' " United States v. Barger, 931 F.2d 359, 366 (6th Cir.1991), quoting United States v. Pennell, 737 F.2d 521, 534 (6th Cir.1984), cert. denied, 469 U.S. 1158 (1985).
 
 
 19
 In deciding whether the defendant is entitled to prevail as a matter of law, the court must view all evidence in the light most favorable to the prosecution. Id.
 
 
 20
 When a defendant raises the defense of entrapment, the burden shifts to the government to "prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by government agents." Jacobson v. United States, 112 S.Ct. 1535, 1540 (1992). That Mr. Smith was predisposed to accept a bribe was something of which the FBI could not have been sure at the time it asked Mrs. Brown to record her conversations. But the government was not required to prove predisposition with evidence obtained before it first approached Mr. Smith. The defendant's "ready commission of the criminal act [can] amply demonstrate[ ] the defendant's predisposition." Jacobson, 112 S.Ct. at 1541 (citations omitted).
 
 
 21
 In United States v. Kussmaul, 987 F.2d 345 (6th Cir.1993), where the defendant ordered obscene material from the government in a "sting" operation, we held that the defendant was not entrapped as a matter of law despite the fact that the government had no evidence of predisposition prior to its initial contact with him. Id. at 348. The government "does not need to establish a reasonable suspicion of illegal activity before instituting a sting operation." Id. at 349.
 
 
 22
 In assessing a defendant's predisposition, a court is to consider several factors:
 
 
 23
 "(1) the character or reputation of the defendant, including any prior criminal record;
 
 
 24
 (2) whether the suggestion of the criminal activity was initially made by the Government;
 
 
 25
 (3) whether the defendant was engaged in the criminal activity for profit;
 
 
 26
 (4) whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and
 
 
 27
 (5) the nature of the inducement or persuasion supplied by the Government." United States v. Harris, 9 F.3d 493, 498 (6th Cir.1993) (citing United States v. Barger, 931 F.2d at 366).
 
 
 28
 Examining these factors in the light of the record before us, we think that reasonable jurors could well have concluded that Mr. Smith was predisposed to seize the criminal opportunity presented to him.
 
 
 29
 It was Mr. Smith's own father, not the government agents, who first suggested that Mrs. Brown seek out Thomas Smith. It was Thomas Smith, not the government agents, who first proposed a transfer of cash. Mr. Smith admitted using at least some of the money for himself, indicating a motive to profit personally. He proposed the bribes, and he readily accepted them. This is not a case of a "persistent and overzealous Government pursuing a reluctant and unresponsive individual over an extended period of time." Kussmaul, 987 F.2d at 349 (discussing Jacobson v. United States, 112 S.Ct. 1535 (1992)). The government merely created an opportunity which Mr. Smith eagerly accepted. Under the circumstances, the question of entrapment was a factual question properly left for the jury to decide.
 
 
 30
 Mr. Smith also argues that his acquittal on the extortion count shows that he was entrapped, and he maintains that if he was entrapped before the first payment of money, the subsequent payments were tainted by the initial entrapment. But Mr. Smith is merely speculating when he asserts that the jury acquitted him on the first count because it concluded that he was entrapped. The jury could easily have concluded that the first payment was a legitimate campaign contribution and that the subsequent payments were bribes. In any event, it is well established that a jury may reach logically inconsistent verdicts in a criminal case. Courts should not presume to plumb the jury's motivation. United States v. Clemmer, 918 F.2d 570, 573 (6th Cir.1990), citing Dunn v. United States, 284 U.S. 390 (1932). If there were inconsistent verdicts here--and we do not mean to suggest that we think there were--the inconsistency does not justify a reversal.
 
 B
 
 31
 The district court's handling of the jury instruction was entirely proper. The court proposed to use Sixth Circuit Pattern Jury Instruction 6.03 on the subject of entrapment. Mr. Smith objected and offered an alternative instruction, contending that Jacobson v. United States, supra, changed the law of entrapment by requiring the government to prove that the defendant was predisposed to commit the crime before his contact with law enforcement agents. The district court modified the pattern instruction, but did not adopt Mr. Smith's proposal in its entirety. The jury was instructed that "the government has the burden of proving beyond a reasonable doubt that the defendant was already willing to commit the crimes prior to first being approached by government agents or other persons acting for the government."
 
 
 32
 A trial court has broad discretion in formulating jury instructions, as long as the instructions given accurately state the law. United States v. Busacca, 863 F.2d 433, 435 (6th Cir.1988), cert. denied, 490 U.S. 1005 (1989). Refusal to deliver a requested instruction is a ground for reversal only when the requested instruction (1) correctly states the law, (2) is not substantially covered by the instructions actually given, and (3) concerns a point so important that its omission substantially impairs the defense. United States v. Driscoll, 970 F.2d 1472, 1483 (6th Cir.1992), cert. denied, 113 S.Ct. 1056 (1993). See Lewis v. City of Irvine, 899 F.2d 451, 456 (6th Cir.1990) (reversing because the magistrate's instructions contained "fundamental flaw[s]," made "several material misstatements of the applicable law," and framed a Fourth Amendment issue in language expressly rejected by the United States Supreme Court).
 
 
 33
 In the case at bar the court's instructions accurately stated the law and substantially covered the point that Mr. Smith sought to get across. In telling the jury that the government bore the burden of proving that Mr. Smith was predisposed to commit the crime before being approached by government agents, the court fairly captured the temporal element for which Mr. Smith was contending. There is no indication, moreover, that the district court's refusal to use the exact words of Mr. Smith's proposed instruction substantially impaired the defense.
 
 C
 
 34
 Although testimony was presented to show that Mr. Smith had cooperated with the government, the trial court excluded as irrelevant evidence describing the nature and extent of that cooperation. Mr. Smith argues that such evidence ought to have been admitted because it was relevant to the question of entrapment. The government needed a legislator to cooperate in investigating other Kentucky legislators, the argument goes, and if the jury had known how helpful Mr. Smith had been, it would have been easier for the jury to find that the government induced him to commit crimes in order to win his cooperation.
 
 
 35
 A district court's decision to exclude evidence will not be reversed absent an abuse of discretion. United States v. Williams, 952 F.2d 1504, 1518 (6th Cir.1991). Even if a district court's evidentiary ruling represents an abuse of discretion, a new trial is not warranted unless the defendant's substantial rights are affected. Fed.R.Crim.P. 52(a); Rye v. Black and Decker Mfg. Co., 889 F.2d 100, 103 (6th Cir.1989). An abuse of discretion not affecting substantial rights is harmless error. Fed.R.Crim.P. 52(a).
 
 
 36
 To the extent that the district court may have abused its discretion here--an issue we need not decide--we are satisfied that the error, if any, was harmless. Once a defendant raises the defense of entrapment, the burden shifts to the government to prove that the defendant was predisposed to commit the criminal act. Jacobson, 112 S.Ct. at 1540. Even where it is undisputed that the government has induced the defendant's criminal activity, the entrapment defense fails if the government can prove that the defendant was predisposed to commit the crime. See id.
 
 
 37
 Evidence of the government's motive here is irrelevant to the issue of the defendant's predisposition to commit the crime--"the principal issue in an entrapment defense." United States v. Robinson, 763 F.2d 778, 782-783 (6th Cir.1985). If the evidence in question may have had some marginal relevance on other grounds, we are not persuaded that additional evidence on the nature and extent of Mr. Smith's cooperation would have had a material effect on the success of the entrapment defense. The district court did not harm Mr. Smith's substantial rights by excluding evidence of the nature of his post-crime cooperation.
 
 III
 
 38
 Mr. Smith argues that statements he made to the FBI agents in the motor home on June 11 should have been excluded on two grounds: (1) the statements were coerced by promises of leniency, and (2) he was "in custody" and should not have been interrogated without first having been advised of his Miranda rights. See Miranda v. Arizona, 384 U.S. 436 (1966).
 
 
 39
 To conclude that a defendant's statements were coerced, and hence were involuntary, a court must find that: (1) government officials engaged in objectively coercive activities; (2) those activities were sufficient to overbear the will of the accused; and (3) the defendant's will was in fact overborne by the coercion. McCall v. Dutton, 863 F.2d 454, 459 (6th Cir.1988), cert. denied, 490 U.S. 1020 (1989). Promises of leniency may, in some circumstances, be coercive. See Williams v. Withrow, 944 F.2d 284, 289 (6th Cir.1991), rev'd on other grounds, 113 S.Ct. 1745 (1993).
 
 
 40
 Here the FBI agents told Mr. Smith that they would "explain what you can do to help yourself," told him that he could cooperate with the FBI in future investigations, and offered to talk to the United States Attorney on his behalf. Mr. Smith told the agents that he did not believe they could help his case, insisting that he wanted to hear it from the U.S. Attorney directly--which suggests that his will was not overborne at the time he was speaking with the agents. The district court's conclusion that Mr. Smith's statements were not coerced was not clearly erroneous.
 
 
 41
 As to the Miranda issue, the district court concluded that Miranda did not apply because Mr. Smith was not "in custody." The test for determining this is whether a reasonable person in the suspect's position would believe that he was free to leave. Berkemer v. McCarty, 468 U.S. 420 (1984). Mr. Smith was not told he was under arrest, and he was not charged with a crime on June 11; nevertheless, he was alone in a trailer with four FBI agents who showed him a search warrant for his person and who told him that he was "in a lot of trouble." Mr. Smith maintains that under these circumstances, a reasonable person would believe he was not free to leave.
 
 
 42
 Voluntary statements admitted in violation of the Miranda rule do not warrant reversal of a conviction if the error was harmless. See United States v. Wolf, 879 F.2d 1320, 1323 (6th Cir.1989). Here it is undisputed that Mr. Smith requested a meeting with the FBI on June 12, at which time he voluntarily made most of the same admissions. He did not seek to suppress the June 12 statements. In addition, the government had direct evidence of Mr. Smith's criminal behavior from the tape recordings made by the Browns, as well as Mr. Smith's own admissions at trial. If the trial court erred in admitting the June 11 statements, therefore, we conclude that the error was harmless; it did not substantially impair Mr. Smith's rights, and he is not entitled to a new trial.
 
 IV
 
 43
 We turn next to Mr. Smith's challenges to his sentence. He contends first that the district court erred in not finding that the government entered into an enforceable contract to move for a downward departure under U.S.S.G. Sec. 5K1.1. The district court found as a fact that the government made no such promise, and this finding was not clearly erroneous. The record shows that the FBI agents made it clear to Mr. Smith that they could recommend the making of such a motion, but that the decision was within the discretion of United States Attorney. The district court was justified in finding that the United States Attorney was never committed to exercising his discretion in favor of making the motion.
 
 
 44
 Second, Mr. Smith contends that the district court erred in not departing downward from the sentencing guideline range because of the alleged coercion. This court will not review a trial court's refusal to depart downward from the guideline range unless the trial court erroneously concluded that it had no power to depart. United States v. Brannon, 7 F.3d 516 (6th Cir.1993). Here the district court was aware of its discretion to depart downward, but it concluded that a departure on grounds of coercion was "not warranted." Mr. Smith's challenge is thus without merit.
 
 
 45
 Finally, Mr. Smith challenges the district court's refusal to grant a reduction in his sentence on the basis of acceptance of responsibility. The determination of whether a defendant has accepted responsibility is a finding of fact not to be disturbed unless clearly erroneous. United States v. Williams, 940 F.2d 176, 181 (6th Cir.), cert. denied, 112 S.Ct. 666 (1991). The burden of proof is on the defendant to show that he clearly accepted responsibility. U.S.S.G. Sec. 3E1.1; United States v. Crousore, 1 F.3d 382, 386 (6th Cir.1993). Here the probation officer who prepared the presentence report found that Mr. Smith had not accepted responsibility, and the district court agreed. Because Mr. Smith maintained his innocence throughout the proceedings, we cannot say that the court was clearly erroneous.
 
 
 46
 AFFIRMED.
 
 
 
 [1]
 The Honorable Charles W. Joiner, United States Senior District Judge for the Eastern District of Michigan, sitting by designation